IGLEHART *vs.* STATE use MACKUBIN.—*June*, 1830.

G obtained judgment by confession against W, as executor, who thereupon stayed execution by a writ of error and bond. While the case was pending in the appellate Court, the executor died, and the writ of error was abated. The executor, who had received assets sufficient to pay the judgment, died insolvent, and the administrator *d. b. n.* of the first deceased, did not find assets sufficient to discharge the debt. In an action upon W's testamentary bond, against his surety, for the use of G, a replication disclosing the above facts, was held sufficient on general demurrer and a compliance with the act of 1720, *ch.* 24.

In this case the defendant rejoined, "that the said executor had no goods or chattels which were of the deceased testator, at the time of his death in his hands to be administered, nor had at any time thereafter:" HELD, on demurrer, that this rejoinder could not be received as a general plea, extending over the whole time from the death of the testator to the death of the executor, that no goods of the deceased ever came to the executor's

hands; for its relative expressions "nor at any time thereafter" evidently indicated a particular point of time, when the executor was without goods or chattels with which to pay the debt, as they implied a period of time when he had such goods and chattels—that it could only be considered as a plea of *plene administravit,* or a substitute for such a plea, and as such, it was materially defective.

Upon general demurrer, it is the duty of the Court to look to, and adjudicate upon all the pleadings in the cause.

The confession of a judgment by an executor is conclusive on him, as well as to the debt confessed, as to the sufficiency of the assets to pay it; but in relation to his surety, in his testamentary bond, it is only *prima facie* evidence, either as to the debt, or sufficiency of assets to pay it.

ERROR to *Anne Arundel* County Court.

This was an action of *debt* instituted on the 4th day of September, 1823, in the name of the State use of *George Mackubin,* on the testamentary bond of *William Warfield,* executor of *Thomas Warfield,* bearing date on the 5th of April, 1819, against the appellant, *James Iglehart, Junior,* one of the securities in said bond. To the plea of general performance by the defendant, the plaintiff filed the following replication : " for plea nevertheless by way of replication, the said State saith, that at a County Court of *Anne Arundel* County, begun, &c. on the 3d Monday of April, 1822, the said *George Mackubin,* named in the endorsement of the original writ in this cause, at whose instance and for whose use the same was impetrated, by judgment of the said Court, recovered by confession against the said *William Warfield,* by the name of *William Warfield,* late of said County, merchant, executor of the testament and last will of *Thomas Warfield,* deceased, as well the sum of $11,313 50, a certain debt, as the sum of $6 52, as for his costs and charges by him about his suit, in that behalf laid out and expended, to be levied of the goods and chattels which were of the said *Thomas* at the time of his death, in the hands of the said *William,* remaining to be administered, if so much thereof in the hands of the said *William* to be administered he had, and if so much thereof in his hands to be administered he had not, then the costs and charges

aforesaid to be levied of the proper goods and chattels of the said *William Warfield;* and the said *George Mackubin* did then and there agree to release the said judgment, upon the payment of the sum of $5656 75, current money, with interest thereon from the 19th day of November, 1818, and the said costs; as by the record and proceedings of the said Court now remaining at the city of *Annapolis,* aforesaid, manifestly appears, which said judgment, in form aforesaid rendered, was for a just and *bona fide* debt, due to the said *George Mackubin* by the said *Thomas Warfield,* in his life-time, and then and not yet being paid or in any manner satisfied; and the said judgment still remains in full force and effect, no ways reversed or annulled. And that after the death of the said *Thomas,* and at the time of rendering the said judgment, the said *William* as executor as afore-said, had of the goods and chattels, which were of the said *Thomas* at the time of his death, in his hands to be admin-istered, to the value of the debt, costs and charges afore-said, in the said judgment and release thereof mentioned, wherewith the said *William,* executor as aforesaid, the said debt costs, and charges aforesaid, could have satisfied, to wit, at *Anne Arundel* County aforesaid. And the said State further saith, that after the rendition of the said judg-ment, to wit: on the 28th day of June, 1822, the said *Wil-liam Warfield,* for reversing the said judgment, prosecu-ted and sued forth out of the High Court of Chancery of this State, a certain writ of the State, for correcting errors in the record and process, and also in the rendition of the said judgment, directed to the judges of *Anne Arundel* County Court aforesaid. By which said writ the said judges of the said County Court were commanded, that if judgment be thereof rendered, that then the record and process of the said plea, with all things touching the same, under their seals distinctly and openly they send, and that writ, so that the same might be had before the judges of the Court of Appeals for the Western Shore, to be held at the city of *Annapolis,* on the first Monday of December, then

next, that the record and process aforesaid being inspected into, the judges of the Court of Appeals might further do therein for the correcting of that error, which of right and according to the laws and customs of this State ought to be done. And the said *William Warfield*, immediately on suing out the said writ of error as aforesaid, entered into bond with sufficient sureties approved by the Chancellor in double the sum recovered by the said judgment, with a condition " that if the said *William Warfield* should not pursue the directions of the act entitled, ' An act for regulating writs of error, and granting appeals from and to the Courts of common law within this province,' at the next Court of Appeals for the Western Shore, and prosecute the same writ with effect, and also satisfy and pay, to the said *George Mackubin*, his executors, administrators and assigns, in case the said judgment should be affirmed, as well all and singular the debt, damages and costs adjudged by the said County Court, as also all costs and damages that should be awarded by the said Court of Appeals, then that the said bond should be and remain in full force and virtue, otherwise of no effect." By virtue of which said writ of error the said judges of the said County Court here, afterwards to wit, on the said 8th day of June, 1822, transmitted the record and process of the plea and judgment aforesaid, with all things touching the same, unto the judges of the said Court of Appeals at the city of *Annapolis* aforesaid. After which, and before the said judgment was affirmed by the said Court of Appeals, the said *William Warfield* died, and such proceedings were had on the said record in the said Court of Appeals, that at June term, 1823, of the said Court, the said *William Warfield*'s death was suggested, and the said writ of error abated, and was entered abated, as by the said record and proceedings in the said Court of Appeals remaining, more fully appears. And the said State further saith, that after the death of the said *William Warfield*, to wit, on the 24th day of January, 1823, administration of all and singular the goods and chattels, rights and credits which

were of the said *Thomas Warfield* at the time of his death, left unadministered by the said *William Warfield,* deceased, executor as aforesaid, was by the Orphans Court of *Anne Arundel* County, in due form of law granted to the said *James Iglehart, Jun.* and one *David Ridgely* of the County aforesaid; who on the 11th day of March, 1823, at the County aforesaid sold, and returned to the said Orphans Court in due form of law an account of their sales of, all the goods, chattels and personal estate of the said *Thomas Warfield,* left unadministered by the said *William Warfield,* deceased, executor as aforesaid, which came to their hands to be administered, amounting to the sum of $71 74½, which said sum is not sufficient to pay to the said *George Macku-bin* the said sum of $5656 75, current money, with interest thereon from the 19th day of November, 1818, and the said sum of $6 52 costs, in the said judgment, and the release thereof mentioned. And the said State further saith, that after the death of the said *William Warfield,* to wit: on the 2d day of November, 1822, administration of all and singular the goods and chattels, rights and credits which were of the said *William Warfield,* deceased, at the time of his death, was, by the Orphans Court of *Anne Arundel* County, granted to a certain *John W. Duvall* of the county aforesaid; who, on the 12th day of November, 1822, returned to the said Orphans Court in due form of law, an inventory of the goods, chattels and personal estate of the said *William Warfield,* amounting to the sum of $5943 62½, and an additional inventory amounting to the sum of $489 33, and on the 3d day of March, 1823, an account of the sales of all the said goods, chattels and personal estate, amounting to the sum of $5855 79; and on the 9th day of April, 1824, duly returned to the said Court a list of debts due from the said *William Warfield,* amounting to the sum of $12,420 96, and the said State saith that the amount of the said sales, and of all the goods and chattles, rights and credits, and personal estate, which were of the said *William Warfield* at the time of his death, are

not sufficient to discharge and pay to the said *George Mack-ubin*, the said sum of $5656 75, current money, with inter-est thereon from the said 19th day of November, 1818, and the said sum of $6 52, costs in the said judgment, and the *release thereof mentioned, and also to discharge and pay the other debts due* from the said *William Warfield* at the time of his death.   And the said State further says, that execution of the judgment aforesaid, yet remains to be made to the said *George Mackubin.* Nevertheless the said *William Warfield,* as executor as aforesaid, althoug hoften thereunto requested, by the said *George Mackubin,* hath not yet paid or satisfied to the said *George Mackubin,* the debt, damages, costs and charges aforesaid, in the judgment aforesaid mentioned; but hath altogether refused to pay the same to the said *George Mackubin.*   And so the said State says, that the said *William Warfield,* executor as aforesaid, hath not paid the debts of the said *Thomas Warfield,* which he did owe at the time of his death, so far forth as the goods, chattels and credits, which were of the said *Thomas War-field* at the time of his death, would extend, and the law would charge, as he ought to have done, but hath wasted and misapplied the same, contrary to the form of the con-dition of the writing obligatory aforesaid; and this the said State is ready to verify, &c.   Wherefore, &c."

To this replication the defendant rejoined as follows:

" And the said *James Iglehart, Jr.* comes, &c. and as to the replication of the said State he saith, that the said State ought not, &c. because he the said *James* saith, that the said *William Warfield* in the condition of the writing obli-gatory mentioned, had no goods or chattels which were of the said *Thomas Warfield,* at the time of his death, in his hands to be administered, nor had at any time thereafter, and this he is ready to verify.   Wherefore he prays judgment, &c."   General demurrer by the plaintiff to the defendant's rejoinder, and joinder in demurrer.   The County Court ruled the demurrer good, and rendered judgment for the

plaintiff. Whereupon the defendant sued out the present writ of error.

The cause was argued before Buchanan, Ch. J., Earle, Martin, and Archer, J.

*Magruder* and *Shaw,* for the appellant, contended,

1. The court below erred in ruling the demurrer to the defendant's rejoinder to be good. 2. That the matters set forth in the replication do not preclude the appellant from shewing a deficiency of assets of the estate of *Thomas Warfield.* 3. That the appellee cannot maintain this action, it being too rigorous a prosecution of the testamentary bond. 4. That the first error in pleading was committed by the appellee. 5. That the rejoinder is good. 6. That the appellant cannot be made responsible beyond the condition of his bond.

By demurring to the plea of no assets, the plaintiff has admitted, that the executor confessed a judgment when there were not sufficient assets in his hands, and this admission by the plaintiff should do away the effect of the judgment, as evidence of assets against the executor. If, however, the judgment should be deemed conclusive as against the executor, it cannot be so with respect to his surety, otherwise the rule that no man shall be bound by a judgment which he could not defend, will be destroyed. This is not like the case of a surety on an appeal bond, who stipulates positively to pay, if the judgment be affirmed. The actual amount of the assets is the limit of the responsibility of the surety, and the executor cannot extend it, by confessing judgment for a larger amount. Confessions in court are entitled to no more weight than confessions out of court. They are merely *prima facie* evidence. *Drummond vs. Prestman,* 12 *Wheat.* 515. It does not follow, that because the party confessing the judgment is concluded, that others interesting in defeating it, shall be equally concluded. 2 *Bro. Ch.* 610. If the defendant cannot plead a want of assets,

then the judgment against the executor must be an *estoppel,* and in that case, it should have been pleaded as such. 2 *Chitty Plea.* 592. The plea of no assets, is a legal defence, and the defendant should be allowed the benefit of it, unless he has once before had an opportunity of doing so, and waived it, but this is not the case, as he is now for the first time in Court—the judgment set forth in the replication does not amount to an admission of assets—it is nothing more than an admission of the debt, *Act* 1798, *ch.* 101. The replication does not show the estate to be insolvent—the list of debts returned is not evidence of their existence, and many of them may have been defeated; 1820, *ch.* 174, *sec.* 7. In proceeding against a surety, it is indispensable to show a *devastavit,* by the executor—now non-payment of a debt is no *devastavit,* because the executor may not have been able to get in the assets, 1 *Saund.* 219, *(B) note* 8. The replication does not charge that the administrator *d. b. n.* of *Thomas Warfield,* had not paid the debt, and he was the party to pay upon the death of *William,* the first executor, during the whole of whose life the debt was in litigation; if the administrator *d. b. n.* is the party liable, then the plaintiff has sued the wrong person, and his replication is totally defective. They referred to the *Acts of* 1820, *ch.* 24—1802, *ch.* 101, *sec.* 1—1806, *ch.* 90—1815, *ch.* 149. *Seegar vs. The State,* 5 *Harr. and Johns.* 488. *Quynn vs. The State,* 1 *Harr. and Johns.* 37. *M'Mechen vs. Mayor of Baltimore,* 2 *Harr. and Johns.* 41. *Johnson vs. State,* 3 *Harr. and M'Hen.* 223. *Beall vs. Beck, Ib.* 242. 1 *Com. Dig.* 215. 3 *Stark. Ev.* 1387, *note* (3.) *Ib.* 1300. 1 *Phil. Ev.* 242, 248. *Drummond vs. Prestman,* 12. *Wheat.* 515.

*Taney* (Att'y Gen'l) and *Brewer,* Jr. for the appellee.

1. The case is so presented by the record, that this Court cannot reverse the judgment. The *Act of* 1825, *ch.* 117, was designed to make the Court of Appeals purely an appellate Court, and the appellant must show, that the points

which he urges here, were actually raised, and decided by the County Court; now the question of assets, and whether there was a *devastavit* or not, do not appear to have been raised in the Court below—the decision there, may have been on the defectiveness of the rejoinder. 2. The judgment is conclusive as to assets, whatever may be said of the *devastavit*, and being conclusive, supposing both the replication and rejoinder to be good, the plea of *plene administravit*, or no assets, could not be pleaded. 3. Whenever an executor or administrator is bound, *de bonis propriis*, his sureties are equally bound—if this suit was against the administrator, he would be held liable *de bonis propriis*, and if so, the sureties being liable in the same bond, and for the performance of the same duties, are equally bound. If there be any case in which a judgment against one person, should be evidence against another, it is a case of this sort—the party against whom the judgment must first be obtained, is he who has the best, and only means of disputing either the debt, or assets—suppose the creditor is defeated in his suit against the administrator, is he not bound by it? can he afterwards sue the security?—he certainly could not, and it would seem to be right, that as a judgment in favor of the administrator would be conclusive evidence for him, that a judgment against the administrator should be conclusive against him. 4. But suppose the judgment is only *prima facie* evidence, still the judgment below must be affirmed—the replication states a good cause of action, and the rejoinder is defective in not averring that the administrator had no assets, at the time of the institution of the suit—2 *Saund.* 216, *note* (1.) It is not pretended that a *nulla bona* was indispensable to suing the bond. *Act* 1820, *ch.* 24—they referred also to 2 *Chitty Plea.* 451, the *Act of* 1802, *ch.* 101, *sec.* 1. 1 *Saund.* 219, (A) *note* (8) (C.) *Erving vs. Peters*, 3 *Term. Rep.* 685.

EARLE, J., delivered the opinion of the Court.

The controversy between these parties, arises from an action by the appellee against the appellant, as a surety in the testamentary bond of *William Warfield,* executor of *Thomas Warfield,* to recover the amount of a judgment obtained against the executor. The judgment was appealed from, and pending the appeal the executor died, not leaving sufficient estate to pay his debts. All this matter is set forth at large in the replication, as well as an administration *de bonis non,* on the unadministered estate of *Thomas Warfield,* which amounted to a very trifling sum, wholly inadequate to the payment of the appellee's judgment. To this replication the defendant, now the appellant, put in a rejoinder, (*ante* 240) which drew from the adversary pleader a general demurrer, and its legal sufficiency is the first question to be decided by this Court. This rejoinder is clearly not to be received as a general plea of *nulla bona devenerint ad manus,* extending over the whole time from the death of the testator to the death of the executor for its relative expressions, "nor at any time thereafter," evidently indicate a particular point of time, when the executor was without goods or chattels with which to pay the debt, as they imply a period of time, when he had such goods and chattels. We can consider it only as a plea of *plene administravit,* or a substitute for such a plea, and so considering it, the plea appears to us to be materially defective. The point of time, when the executor was without goods or chattels to answer the demand against him is not specified, and is left in uncertainty and doubt; and the plea omits the words "and that he had not any goods or chattels of the testator, on the day of issuing out of the original writ, or ever after," which words are essential, and without which, it is bad on demurrer. 2 *Saund. Rep.* 216, *note* 1. A general demurrer having been put in to the rejoinder, it became the duty of the Court below, to look to, and adjudicate upon all the prior pleadings in the cause, and presuming they did so, we proceed in the next place to examine the re-

plication in the record, and give our ideas of it. The matter of this plea is ample, comprising all that is made requisite by the act of 1720, *ch.* 24, with which we have carefully compared it ; and it appears also to us to be well pleaded. The *fieri facias* was arrested by the appeal, and no return of course was made of *nulla bona,* but its equivalent is fully stated, and satisfactorily demonstrates, that the creditor was remediless by any other reasonable means, save that of suing the testamentary bond. Our judgment must consequently be in affirmance of the judgment of *Anne Arundel* County Court; yet before we leave the case, we think it right in a short way to express our opinion on a point argued before us, which is closely connected with this subject, and is interesting to the public to be settled. The confession of a judgment by an executor is conclusive on him, as well as to the debt confessed, as to the sufficiency of the assets to pay it; but what legal effect it has on the rights of his surety, in the testamentary bond, is the question to be solved? Not being a party to the judgment, he cannot be concluded by it, although his liabilities depend on the acts and confessions of his principal. It seems to us, therefore, that in determining his rights, the judgment against the executor, ought to be considered to have but a *prima facie* influence, either as to the debt recovered, or the sufficiency of the assets to pay it. As to him it is nothing more than the declarations or confessions of the principal, clothed with legal solemnities, and should only be deemed in all respects correct, until the contrary is made to appear. This opinion is in accordance with *Drummond vs. Prestman,* 12 *Wheat.* 519, and apparently so, with a case there cited, from 15 *Massa. Rep.* 6, which book unfortunately we have been unable to procure. It is opposed, however, to *Beall vs. Beck,* 3 *Harr. and M'Hen.* 242; unless that case is to be understood, as construed by the Supreme Court of the *United States* in *Drummond vs. Prestman,* in which sense we acknowledge its authority.

**JUDGMENT AFFIRMED.**