Jenkins vs. State, use of Staylor and Dobler, Adm'rs.

(Filed 8th June, 1892.)

GEORGE C. JENKINS, MICHAEL JENKINS, and JOSEPH W. JENKINS, Jr. vs. STATE, use of CAROLINE L. STAYLOR, and JOHN J. DOBLER, Administrators of WILLIAM A. STAYLOR.

*Res judicata—Sureties on Administration bond—Vacating deed—Evidence.*

The son of an intestate conveyed to his mother, the administratrix, all of his right, title, interest, and estate, in the estate, real, personal, and mixed, of his deceased father, and in any property of which his father died seized or possessed. Administration of the estate was had, and distribution was made. The son died intestate, leaving a widow and two infant children. Under proceedings in equity instituted shortly after his death, in behalf of his widow and children, his deed was vacated and set aside on the ground of fraud and undue influence. The case being referred to the auditor, an account was stated showing the amount due from the administratrix. The amount so found due, she was ordered by the Court to pay to the administrators of the son. The order was not complied with. No appeal was taken from the decree vacating the deed, nor from the decretal order overruling exceptions to the auditor's account. In an action on the bond of the administratrix to recover this amount it was HELD :

Jenkins *vs.* State, use of Staylor and Dobler. Adm'rs.

That as it was not contended there was fraud and collusion in obtaining the decretal order directing the payment of the money, or that there was error in the ascertainment of the amount directed to be paid, the sureties on the bond, although they were not parties to the proceedings in which the decree vacating the deed was passed, were bound thereby, and could not inquire into its validity.

The deed under which the distribution was made by the administratrix, having been annulled for fraud and undue influence, her distribution in the Orphans' Court, made when the deed was in force, became likewise fraudulent and void, and the sureties on her bond, on her failure to pay over the money as ordered, became liable.

The equity proceedings in which the deed was vacated, being conclusive on the sureties, the record of such proceedings was admissible in evidence in an action against them.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. *Five Exceptions* were taken by the defendants. The *First, Second,* and *Fifth Exceptions,* are sufficiently referred to in the opinion of the Court.

*The Third Exception,* was taken to the refusal of the Court, (HARLAN, J.) to admit in evidence duly certified copies of the two deeds, one from William A. Staylor to Jane Staylor, dated the 12th of June, 1877, and the other from Jane Staylor and others to George C. Jenkins and others, dated the 27th of June, 1877, as also the testimony of the justice of the peace, before whom William A. Staylor acknowledged the deed of the 12th of June, 1877, as to the competency of said Staylor at the time of such acknowledgment, to understand the nature and effect of his act.

*The Fourth Exception* was taken to the refusal of the Court to admit in evidence two administration accounts passed in the Orphans' Court by Jane Staylor, administratrix of her husband, as also proof by her that her son died suddenly from apoplexy on the 16th of June, 1878;

that she saw him the previous evening, when he appeared to be in his usual condition of good health, and was quite sober; and further that no question of the validity of the deed of the 12th of June, 1877, was ever made until after his death, and that he frequently, after the execution of the deed, and up to the time of his death, in conversation with her, recognized said deed as his deliberate and valid act.

A verdict was rendered for the plaintiff, and judgment was entered thereon. The defendants appealed.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, McSHERRY, and BRISCOE, J., and re-argued before the same Judges, together with MILLER and BRYAN, J.

*Arthur W. Machen*, and *William A. Fisher*, for the appellants.

*John J. Dobler*, and *John Prentiss Poe*, *Attorney-General*, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is an action brought in the name of the State for the use of the equitable plaintiffs against the principal and surviving obligors on a bond, conditioned for the faithful performance of the duties imposed on the principal as administratrix. The facts as presented by the record are these: William Staylor died intestate in the year 1877, leaving a widow, Jane Staylor; a son, William A. Staylor; and a daughter, Miriam Staylor. Letters of administration were granted upon his estate to the widow, by the Orphans' Court of Baltimore City, and the Messrs. Jenkins, the appellants, with a Mr. Whiteford, who has since departed this life, were sureties on her bond. The personal assets of the estate amounted to about $41,000.00, the principal part of which consisted of an interest in the firm of Jenkins, Staylor &

Co., of which he was a member, together with the appellants in this case.   On or about the 12th day of June, 1877, William A. Staylor, the son, executed a deed to his mother, Jane Staylor, in which he assigned and conveyed to her "all the right, title, interest, and estate, of the said William A. Staylor, in the estate, real, personal, and mixed, of his deceased father, and in any property of which his father died seized or possessed." This deed was properly executed, the consideration being $500, and was signed by his wife, Caroline L. Staylor.   Jane Staylor, the administratrix, passed on the 26th of June, 1880, an administration account in which she charged herself with the whole personal estate, and after an allowance for debts and expenses, distributed the residue, which amounted to about $27,000.00, as follows: Two-thirds to herself in her own right, and as assignee of William A. Staylor under the deed, and one-third to the daughter, Miriam.   William A. Staylor, the grantor in the deed, departed this life, intestate, on the 16th of June, 1878, one year after the execution of the deed, leaving surviving him a widow and two infant children; and shortly after his death, on the 10th day of January, 1879, proceedings were begun in the Circuit Court of Baltimore City against Jane Staylor, in behalf of his widow and infant children, to vacate and annul this deed, upon the ground of fraud and undue influence.   And the Circuit Court on the 16th day of September, 1880, decreed that said deed be vacated and set aside, and ordered that the case be referred to the auditor to state an account between the said William A. Staylor and Jane Staylor, in her individual right and as administratrix; she in her character as administratrix, and the said Caroline L. Staylor and John J. Dobler, administrators of William A. Staylor, having been made parties to the bill.   Testimony was then taken, and the case heard upon exceptions to the auditor's account.   After notice to the

parties, and a full hearing, the Court, on the 28th of November, 1884, overruled the exceptions, and by a decretal order ratified and confirmed the account, and ordered that the administratrix of William Staylor pay to the administrators of William A. Staylor, the amount found to be due by her, to wit, the sum of $3,639.37, with interest from November 17th, 1880.

There was no appeal from the decree vacating the deed, nor from the decretal order of the 28th of November, 1884; and upon a failure of the administratrix to pay over the money in accordance with the order, suit was instituted by order of the Court, upon the bond. The principal questions in the case arise partly on demurrer and partly on bills of exceptions to the admissibility of testimony. Some of the questions were disposed of by this Court, on a former appeal, reported in 70 *Md.*, 472. To the declaration which assigned the non-payment of the money in accordance with the decretal order of the Court as a breach of the condition of the bond the defendants pleaded general performance, and a special plea setting forth the fact of the deed of June 12, 1877, and the distribution in the Orphans' Court thereunder. The plaintiffs demurred to the first plea, and by way of replication to the others alleged, 1. That the deed was vacated and set aside by the decree of the Circuit Court for causes existing at the time of its execution, and that the accounting and distribution was annulled by the Circuit Court. And 2, that the defendant had notice of the pendency of the proceedings in the Court where the deed was set aside. The defendants demurred to the replication, and it being overruled, the sureties then filed rejoinders to the replication. Other pleadings were then filed on the part of the plaintiffs and defendants, but they relate principally to the effect of the deed of the 12th of June, 1877; to the decree of the Court vacating said deed and to the decretal order of November, 1884. The

main question, then, presented for our consideration is, how far, under the pleadings and evidence of this case, are the sureties upon this bond concluded by the decretal order against their principal for a breach of the duty secured by the bond. It is well settled in this State by numerous authorities that the recovery of a judgment or decree, against the principal in a bond, although the sureties were no parties to the suit, is *prima facie* binding upon the sureties. They can only relieve themselves of such binding effect of the recovery against the principal, by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was entitled to recover, or that he was not entitled to recover at all. *Iglehart vs. State, use of Mackubin,* 2. *G. & J.,* 235; *Parr and Cockey vs. State, use of Cockey,* 71 *Md.,* 234. It is not, however, contended on the part. of the appellants that there was fraud and collusion in the obtention of the decretal order of the Circuit Court, nor that there is error in the ascertainment of the amount directed to be paid by said order, but they seek to enquire into the validity and effect of the deed of the 12th of June, and the decree vacating said deed, and in this way to bring collaterally in question the decree annulling the deed. If this contention be correct, and they can succeed therein then the decretal order, ascertaining the amount to be due, would be a nullity, and these sureties would not be liable. But to this contention we cannot assent. The deed of the 12th of June had been decreed by a Court of competent jurisdiction to be null and void, as between the parties thereto, for causes existing at its date, and was no longer to be regarded as a subsisting instrument for any purpose. Having been vacated for fraud and undue influence, it stood as if it had never been made. In the case of *Parr and Cockey vs. State, use of Cockey,* 71 *Md.,* 233, and other cases there referred to, this Court held, where a release to a guardian had

been annulled and vacated for fraud and mistake exist-
ing at its date, and it was sought afterwards to be used
as evidence in defence to an action on the bond against
the sureties, "that it could no longer be regarded as a sub-
sisting instrument to be used for any purpose.   It could
not be used as an effective instrument by the guardian
himself, nor could it be used by any one standing in a
relation of privity with or surety for him."   We are,
therefore, clearly of opinion, that it was not competent
for the appellants in this case to inquire into the valid-
ity of the decree of September, 1880.   But the appel-
lants seek to escape liability upon the ground that the
money due by them, as surviving partners of the firm of
Jenkins, Staylor & Co., to the administratrix of Wil-
liam Staylor, was paid over, and the distribution in the
Orphans' Court was made in accordance with the exist-
ing condition of the title, and at a time when the deed
was in full force and operation.   And this distribution
thus made was a lawful and proper one, to the extent of
releasing these sureties.   But even conceding this con-
tention to be true, we do not think it can relieve them
from liability.   The indebtedness from the surviving
partners of Jenkins, Staylor & Co. to the estate, was
one which had to be paid by them to the administra-
trix, notwithstanding the deed, and being a debt due to
his estate, she was, as said administratrix, in the per-
formance of this duty, bound to make a proper and
lawful distribution thereof.   And under the obliga-
tion which these appellants had voluntarily assumed,
they became liable, if she did not so do.   When, there-
fore, the deed under which this distribution was made,
was stricken down for fraud and undue influence, causes
existing at its date, the distribution which she had made
in the Orphans' Court became likewise a fraudulent one,
and null and void.   It was then the duty of the Orphans'
Court, upon application, to direct a proper and rightful

administration of the estate. Upon her failure then to comply with this order, her sureties became liable. This conclusion may work a great hardship to the sureties upon this bond, under the circumstances of this case; but it would be an equal injustice to deprive the infant children of William A. Staylor of a lawful distribution of their father's estate. We know of no legal principle that would sustain a fraudulent assignee in a fraudulent distribution of an estate. This theory of the case, we think, fully disposes of all the questions raised by the demurrers, and sustains the prayers offered on the part of the plaintiffs below. There were five bills of exception taken by the defendants at the trial, four to the admissibility of evidence and one to the granting of the plaintiffs' prayers and to the rejection of the defendants' prayers. The first was taken to the admissibility in evidence of the record and the opinion of the Judge, in the equity case. The effect of the proceedings in that case, we have held, was conclusive on the sureties, and we can see no objection to their being offered in evidence. The second exception was to the admissibility in evidence of a letter tending to prove notice to one of the sureties of the pendency of the equity suit, and to the exclusion of certain testimony in relation to the competency of the grantor to make the deed and other transactions relative thereto. From our view of the case, the evidence offered to sustain the deed was not admissible; the letter was entirely immaterial and its rejection as evidence did not injure the defendants' case. We have held that the effect of the decree was to vacate and annul the deed, and that the distribution thereunder was void, so there was no error in the ruling as to the third and fourth exceptions. The fifth exception was taken to the granting of the plaintiffs' and the rejection of the defendants' prayers. The prayers offered on the part of the defendants were manifestly incorrect, as applicable to

Jenkins *vs.* State, use of Staylor and Dobler, Adm'rs.

this case, for the reasons we have heretofore given.   Entertaining these views, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 8th June, 1892.)


The counsel for the appellants filed a motion on the 8th of February, 1892, for a re-hearing of the foregoing case, and the motion was allowed.   The case was re-argued at April Term, 1892, and the judgment of the lower Court was affirmed for the reasons given in the foregoing opinion, on the first hearing.


McSHERRY, J., filed the following dissenting opinion, in which Judges IRVING and BRYAN concurred:

I am unable to concur in an affirmance of the judgment appealed from in this case.   As it appears to me, there is a very broad distinction between the deed of June 12th, 1877, which, it is alleged, was stricken down by the decree of the Circuit Court of Baltimore City on September 16th, 1880, and the acts done under the deed, and in reliance upon it, while it was regarded and treated by the parties to it as perfectly valid and free from any taint of fraud.   Accepting as true the averments of the bill filed to have it set aside, the deed was not an absolutely void deed ; and whilst it stood unimpeached and unchallenged the appellants, who it is not pretended had the slightest notice of its imperfections (if there were any) were fully justified in making the settlement they offered to show that they did make on the faith of it.   It is undeniably true that where a conveyance is procured by a parent from a child, conferring a benefit on the one and causing a detriment to the other, the instrument will be treated as *prima facie* void when assailed by the grantor, and will be set aside upon his ap-

plication, unless it appear that it was the free, voluntary and unbiased act of the party who made it. But that doctrine was not invoked by the bill of complaint which inaugurated the proceedings that resulted in the decree purporting to annul the deed. Nor could it have been relied on in that case in the face of the allegations of that bill. In view of those allegations, Mrs. Jane Staylor was not intended to take a beneficial interest of any sort under the deed, and despite the apparently absolute character of the conveyance, she was merely a trustee holding the title to the fund for the use of her son and his family.

Had the bill been differently framed I admit that the deed would have been not only *prima facie* invalid, but that it would have been rightly stricken down upon the complaint of proper parties, and upon proof of the confidential relation of the grantor and grantee, unless sufficient evidence had been offered to relieve it from all taint or suspicion of fraud or unfairness. But the theory of the bill, as will presently appear, does not permit the application of this salutary doctrine of a Court of equity. The case, as made by that bill, must be dealt with as the parties have seen fit to present it.

Assuming that the deed was properly vacated, it seems to me, the appellants should have been permitted to show, as tending to exonerate themselves from liability on Mrs. Jane Staylor's administration bond, that the deed was vacated for causes which arose long after its date, and that the distribution made to Mrs. Staylor as assignee of her son was made at a time when the deed was recognized as valid by every person interested in the estate of William Staylor. Whether the deed was void for causes which existed at its date, or on account of reasons arising thereafter, was an issue distinctly raised on the rejoinder to the replications filed to the defendants' fourth amended plea. If Mrs. Jane Staylor, after

the assignment and distribution thereunder to her, betrayed any trust reposed in her by her son, she alone, and not the sureties, who only guaranteed her fidelity as administratrix, ought to answer therefor.

The appellants offered to show that during the life of William A. Staylor no question was ever raised as to the validity of the assignment by him to his mother, though he lived for a year after the date of the deed. In fact, by a subsequent deed, to which Caroline L. Staylor, the wife of William A. Staylor was a party, he re-affirmed the assignment to his mother. It further appears that, six months after his decease, his widow, *in her own behalf, and as next friend of her infant children*, filed a bill against Jane Staylor *individually*, praying that the deed of June 12th, 1877, might be declared null and void. But upon what ground? Was it for causes which existed at its date, or for causes which arose after the death of William A. Staylor? The bill furnishes an unequivocal answer to these questions, and demonstrably shows that if Mrs. Jane Staylor had, after the death of her son, treated the residue of the son's share as held by her in trust for the son's children, instead of claiming it absolutely as her own, the integrity of the deed would never have been questioned. The bill itself excludes the hypothesis that the deed was procured in the first instance by fraud, but assails the assignment solely on the ground that it was being used by Jane Staylor, after the death of her son, to defeat the very object which it had, according to the claim made in the bill, been executed to subserve. The following extracts from the bill are sufficient to establish incontestibly this conclusion : "And your orators further show that the said William A. Staylor had, prior to the decease of his father, become so addicted to habits of intoxication, and had shown himself so unable to take proper care of himself and his property, that his wife, your complainant, Caro-

line L. Staylor, and his mother, the said Jane Staylor, had much cause to fear that the property into which the said William A. Staylor had come upon the death of his father, as aforesaid, would soon be dissipated and lost, and together betook themselves for legal counsel and advice ; and your orators show that, acting upon such advice and counsel, and for the purpose of securing the interest of the said William A. Staylor in the estate of his said father for the benefit of himself and family, it was proposed to him that he should assign his said interest unto his said wife ; and it was further represented to the said William A. Staylor that, upon a refusal to make such assignment, an application would be made to this honorable Court, to the end that he might be found an habitual drunkard, incapable of taking care of himself and of his property.'' After alleging that William A. Staylor was influenced to execute the assignment to his mother ''for the benefit of himself and his children'' by a threatened absolute refusal on her part to pay and deliver his interest into his own hands under any circumstances, the bill proceeds : ''And your orators further charge that the paper writing of June 12th, 1877, herein above referred to, if in fact the same, was executed by William A. Staylor, was designed by the said William A. Staylor and the said Jane Staylor to work a conveyance or assignment of the interest of the said William A. Staylor in the estate of the said William Staylor, to the said Jane Staylor, to be held by the said Jane Staylor for the use and benefit of him, the said William A. Staylor, and of these, your infant orators, his children ; and that the said William A. Staylor was moved to execute the same by the considerations herein set forth, and by his confidence that the said Jane Staylor would so hold the same for the purposes herein above set forth.'' To further show what the object of the deed was, the bill proceeds to allege

that " the said Jane Staylor from time to time paid unto the said William A. Staylor various sums of money, in the aggregate approximating the sum of two thousand dollars, taking from him receipts for the same on account of his interest in the estate of the said William Staylor, and acted in all respects towards said interest of the said William A. Staylor in pursuance of the intended assignment of the same by the said William A. Staylor to her, the said Jane Staylor." And finally, the bill avers " that, immediately upon the death of the said William A. Staylor, the said Jane Staylor ceased to recognize the interest of the said William A. Staylor or of your orators in the estate of the said William Staylor, deceased, and did at once, although then for the first time, as far as your orators are aware, claim that the paper writing above referred to vested in herself absolutely the interest of the said William A. Staylor in his father's estate." In addition to all this, it must be borne in mind that the bill was filed by Caroline L. Staylor, widow of William A. Staylor, in behalf of herself and her infant children. Except upon the hypothesis that the deed was a valid deed of trust for their benefit, they had no standing whatever to file the bill. If the deed was absolutely void—void from the beginnnig— they took no interest under it, and consequently no one but the personal representatives of the deceased William A. Staylor could have assailed the conveyance in a Court of justice. If the deed was void for causes existing at its date the property—it was all personal estate— could only have devolved upon the widow and children of William A. Staylor at his death through an administration ; *Rockwell vs. Young,* 60 *Md.,* 563 ; and as no administrator was appointed until some months after the date of the decree vacating the deed, it was legally impossible for that widow and those children to file the bill they did without affirming or recognizing the original integrity of the deed.

So far, then, from it being claimed that the deed was void from its inception, or was invalid by reason of causes which existed at the time of its execution, the whole theory of the bill filed for the purpose of having it vacated was founded upon the distinct assumption that it was valid when signed and delivered, but that a fraudulent use was made of it by the grantee after the death of her son, which use could only be prevented by striking down and destroying the deed. I do not mean to say that the relief prayed for, to wit, the annulment of the deed, was the proper relief to be sought under the averments of the bill. But I do say that the bill was obviously not founded upon the supposition or suggestion that the deed was originally void. In fact, the bill of complaint does not pretend to allege that the distribution made in the Orphans' Court of William A. Staylor's interest in his father's estate to his mother, under the deed, was improperly or wrongfully made, or made in contravention of the intention of the parties to the deed; nor could it have contained such an allegation in the face of the other averments to the effect that the deed was designed, not to operate as an absolute transfer, but to create a trust for the benefit of William A. Staylor and his children. If this theory of the bill be accepted—that under the deed Mrs. Jane Staylor received her son's share in trust from herself as administratrix, and then, after the son's death, ignored the trust, and violated her duty as trustee—was it not competent for the sureties on her administration bond to show, when sued, that, though the deed had been annulled for this breach of trust (this cause which arose long after its execution), the money was rightfully paid to her as assignee at the time when the deed was unquestioned, and that, therefore, whatever her subsequent misconduct might have been, she in fact held the funds, not as administratrix, but as trustee? Clearly,

under the pleadings to which I have already alluded, it was competent for the sureties to show that the deed was not set aside for causes which existed at its date. But this was not permitted by the Court below.

It is true that in and by the decree professing to annul the deed, Mrs. Jane Staylor, who had been proceeded against only *individually*, was made defendant in her capacity as administratrix; but no subpœna was issued to bring her in, and she never was brought in to the case in her representative character at all. Two years after the date of the decree, she filed a petition in the cause asking that the matters before the auditor be allowed to remain open, so that she might fairly present her rights individually and as administratrix; and she subsequently appeared before the auditor, claiming to be allowed sundry credits in her account with her son's share of his father's estate. The appellees, the administrators of William A. Staylor's estate, came into the case, and were made parties plaintiffs, three months after the decree vacating the deed had been passed. This was the situation of the case when the decretal order of November 28th, 1884, was passed, directing Jane Staylor, administratrix of William Staylor, to pay to the administrators of William A. Staylor the sum of money sued for in this action; that sum being the balance of the share of William A. Staylor remaining in the hands of Jane Staylor after allowing her credit for the payments made by her to him in his life-time. This decretal order has been treated as conclusively binding on Jane Staylor's sureties. The sureties were not parties to the cause in which the decretal order of November 28th, 1884, was passed. When the decree itself was signed, Mrs. Jane Staylor was not a party to the case in her representative capacity, nor were the administrators of William A. Staylor's estate parties thereto. It was not a decree passed in a proceeding instituted by them,

for they had not been appointed; nor was it founded on a bill by distributees against an administrator of Wm. A. Staylor's estate ; but it was a decree passed in a proceeding instituted by parties who had no standing whatever in a Court of equity to impeach the validity of the deed. The decree against Jane Staylor individually did not bind the persons who were sureties on her bond as administratrix. From the time the bill was filed until three months after the decree was signed there was not a plaintiff on the record entitled to ask that the deed be set aside. Those who filed the bill had no better standing to demand such relief than the merest stranger. Of what value, either as evidence or as an estoppel, is a decree which is shown by the proceedings themselves to have been obtained at the instance of persons not entitled to procure it? Does it bind any one? Is it effective in any way? Without proper parties before it the equity Court possessed no jurisdiction to pass any decree at all. And if this be so, and appears on the face of the record, as it does here, the decree annulling the deed was manifestly inoperative. But, laying aside this difficulty, if the subsequent appearance of Jane Staylor before the auditor and her contestation of the auditor's report in Court, had the effect of bringing her into the case in her representative capacity as a party, so as to make the decree thus passed more than two years before that appearance, binding on her as administratrix, the utmost wright which could be attributed to the decretal order thereafter passed on November 28th, 1884, was that of *prima facie* evidence against the sureties. It was at best, "*prima facie* binding upon the sureties," and "they can only relieve themselves of such binding effect of the recovery against the principal by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover, or that he was not entitled to recover at all.

Jenkins *vs.* State, use of Staylor and Dobler, Adm'rs.

*Iglehart vs. State*, 2 *G. & J.*, 235, 245." *Parr vs. State*, 71 *Md.*, 234. This is the settled law of Maryland. Now, if a surety may avoid the effect of a decree for the payment of money, when the decree has been passed against the principal in a case to which the surety is not a party, by showing that the creditor was not entitled to recover against the principal at all, how is it that the same surety is precluded from establishing the fact that the creditor was not entitled to recover against the principal in the character or capacity in which the recovery was actually had? If he may show that the decree was erroneous in that it fastened a liability on the principal when no liability existed, why may he not also show that the decree is erroneous in fixing a liability on the principal as administratrix, when the money was in reality held by her, not in that capacity, but as trustee? It was competent for the appellants to show that the decretal order of November 28th, 1884, was wrong in amount, or totally wrong, if the administrators of William A. Staylor were not entitled to recover at all. But how can that be shown unless an inquiry is allowed into the grounds upon which the recovery was based? If the judgment or decree against the principal be only *prima facie* binding on the surety, necessarily it is subject to be rebutted when relied on against the surety. But how rebutted? Obviously, by a re-examination of the grounds upon which it was founded, and in that way ascertaining whether "the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover," or whether "he was entitled to recover at all." Unless this be permitted, the judgment or decree becomes, in fact, absolutely binding on the surety, notwithstanding it is said to be only *prima facie* in its effect. Suppose a judgment should be obtained against an executor upon a cause of action not due by the testator, and not due by the executor in

his representative capacity, but due by him personally, and that thereafter his bond should be put in suit for the recovery of the amount due on the judgment. Can it be possible that the sureties would not be allowed to show that the executor, as executor, never owed a dollar of the money, but that, on the contrary, every cent of it was due by him personally? And, if this were shown, could his official bond be held liable for his personal debts? The supposed case does not differ a particle in principle from the one at bar. What legal principle is there that will prevent the sureties of Jane Staylor from showing that the decretal order should have been entered against her individually, that is, personally, or as trustee, and not against her as administratrix? If her liability was really personal, and she was not answerable in her representative character, the sureties would not be responsible for her default. The decretal order would then cease to be even *prima facie* evidence against them. If the deed was not void, in fact, from its inception, or if it has not been properly set aside because of the absence of competent plaintiffs, surely the acts done under it could have been relied on by the sureties as tending to show in what capacity she held the money now claimed to be due by her as administratrix of her deceased husband's estate. Upon the theory of the bill of complaint, the payment to Jane Staylor, under the deed, of her son's interest was a good payment when made; and, if good then, the sureties were released. And this they had a perfect right, it seems to me, to show. The sureties should have been allowed to show, as they offered to show by the testimony of Colonel Marshall, the circumstances attending the execution of the deed, and the acts done under it; and also to show that the interest of William A. Staylor passed, as it was intended it should pass, according to the allegations of the bill of complaint, into the hands of Jane Staylor, in trust for

Jenkins *vs.* State, use of Staylor and Dobler, Adm'rs.

her son and his children ; and that it was not held by her as administratrix when the decretal order was passed.

If I am right in the view that the decree of September 16th, 1880, is ineffectual because passed in a cause to which there were no proper plaintiffs—and plaintiffs having no right to file the bill are in law and in fact no plaintiffs at all—and that this appears on the face of the record, then there never has been a decree vacating the deed, because the equity Court had no jurisdiction to pass the one that was passed, and there was palpable error in granting the first of the instructions given at the instance of the appellees.

The case of *Taylor and Bradford vs. State, etc.*, 73 *Md.*, 208, is widely different from the one at bar.   In that case the decretal order was an adjudication *in rem*, which concluded parties and their privies absolutely.   The distinction between that case and this is too clear to need elaboration.

(Filed 8th June, 1892.)