Israel M. Parr and Charles T. Cockey *vs.* State of Maryland, use of William W. Cockey.

*Pleadings—Guardian and Ward—Release—Action on Guardian's bond — Principal and Surety — Res judicata — Parties.*

Whenever a material fact, well pleaded, is passed over by the adverse party without denial, whether it be by pleading in confession and avoidance, or by traversing some other matter, or by demurring in law, it is thereby, for all purposes of pleading at least, conclusively admitted.

Where a Court of equity of competent jurisdiction, in a proceeding between the parties to the instrument has by decree declared a release from a ward to his guardian to be void, for causes existing at its date, such release can no longer be regarded as a subsisting instrument to be used for any purpose.

It cannot be used as an effective instrument by the guardian himself, nor can it be used by any one standing in a relation of privity with or surety for him. Even as against strangers the record of the equity proceeding and the decree thereon will be admissible to prove *rem ipsam* and the legal incidents and consequences of the decree, though not to prove the fact upon which the decree is founded.

And in a subsequent action on the guardian's bond, his sureties cannot invoke or in any manner avail themselves of the release as a subsisting instrument in their defence.

Nor in such action can they avail themselves of the defence that the ward was not induced to execute the release by false and fraudulent representations of the guardian, or that the ward did not as soon as he discovered the alleged fraud by which the release was procured file his bill in equity to have the release vacated and set aside.

A decree adjudicating and directing the payment of a certain sum of money by the guardian to the ward, even though the sureties of the guardian were not parties to the suit, is *prima facie* binding upon them, and they can only relieve themselves of such binding

Parr and Cockey *vs.* State, use of Cockey.

effect of the recovery against the guardian, by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover, or that he was not entitled to recover at all.

If a party be interested in the subject-matter of a suit, and does in fact appear and exercise the right of participating in the defence, as if he were a technical party upon record, he cannot afterwards be heard to contend that he is not bound and concluded by the judgment or decree to the same extent that he would have been if made a technical party to the proceeding.

Where a party has had a full and fair opportunity presented of making all the defences at his command to an asserted right or claim, it is quite immaterial that he has elected to appear and defend in the name of another, who is a party of record, rather than cause himself to be made a co-defendant in the proceeding.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court. The cause was submitted to the Court for determination without the aid of a jury.

The *first four Exceptions* are stated in the opinion of the Court.

*Fifth Exception*—At the trial the defendants offered the three following prayers:

1. The decree of the Circuit Court of the City of Baltimore, affirmed by the Court of Appeals, is not conclusively binding on these defendants; and if the Court believes from the evidence in this cause, that the release referred to in the pleadings was not procured by fraud or false representations, but was procured and given in good faith, after proper opportunities for inquiry had been afforded to and used by said William W. Cockey, then upon the pleadings in this cause the verdict of the Court ought to be for the said defendants.

2. If the Court believes from the evidence in the cause, that when the release referred to in the pleadings was executed, Edward D. McConkey, therein referred to,

owed the equitable plaintiff, William W. Cockey, therein referred to, a balance of $7,707.97, as his guardian; that the said William W. Cockey agreed to accept in full satisfaction of said balance, one hundred and fifty shares of the capital stock of the American Manufacturing Company after the said McConkey had in good faith told him all he knew about the value of said stock, and the condition and operations of said company, and had referred him, for further information, to such holders of said stock and directors of said company as he thought best calculated to give him trustworthy information, in reference thereto, then, upon the pleadings and evidence in this cause, the verdict of the Court ought to be in favor of said defendants.

3. If the Court believes from the evidence in the cause, that the equitable plaintiff accepted one hundred and fifty shares of the capital stock of the American Manufacturing Company, in payment of $7,707.97, the balance due him by Edward D. McConkey, as his guardian, and in consideration thereof executed the release referred to in the pleadings, when said stock was intrinsically valuable, and that he did not offer to return said stock, or to repudiate said transaction in reference thereto, until after said stock had become utterly worthless, then, under the pleadings in the cause, the verdict of the Court ought to be for the defendants,

The Court (HARLAN, J.) rejected these prayers, and the defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John H. Thomas,* for the appellants.

The decrees relied on were only *prima facie* evidence against the appellants, shifting to them the burden of

proof, which would otherwise have been on the plaintiff. *Beall vs. Beck*, 3 *H. & McH.*, 242-3; *Drummond vs. Prestman*, 12 *Wheat.*, 522; *Iglehart vs. State*, 2 *G. & J.*, 245; *Roberts, et al. vs. Woven Wire Mattress Co.*, 46 *Md.*, 384-5; *DeColyar's Law of Guarantees, &c.*, 181, 182 *and* 197, *(2nd Eng. Ed.)*

A surety is not bound by the admissions of his principal. *Griffith vs. Turner*, 4 *Gill*, 111; *McClellan and Wife vs. Kennedy, et al.*, 8 *Md.*, 252.

The surety of an executor is not bound by the accounts of the executor, passed by the Orphans' Court. *Owens vs. Collinson*, 3 *Gill & John.*, 15, 26; *Bantz vs. Bantz*, 52 *Md.*, 689; *Donaldson's Ex'rs vs. Raborg, Adm'x d. b. n.*, 28 *Md.*, 34; *Brandt on Suretyship and Guaranty, sec.* 91.

The appellants had no such participation in the equity proceedings, or in the appeal, as to render them parties thereto, or to make the decrees therein conclusively binding on them. Their third rejoinder alleges, and the demurrer thereto admits, that they did not and could not control the defence, in any part of said proceedings; that they employed counsel to make, and he was only allowed by McConkey to make, in his name and on his behalf, such defence as McConkey chose to allow; and that but for such restriction, they could and would have introduced evidence which would have induced the Circuit Court and the Court of Appeals to render decrees the opposite of those relied on by the plaintiff.

Those only are parties to a case, if not so on the record, who have the right to *control* the proceedings, as between them and an actual party, or at least the same rights which he has, fairly to bring out the merits of the case, by compulsory process for witnesses and otherwise. This Court has said: "It is an obvious principle of justice, that no man ought to be bound by proceedings to which he is a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger,

he may well be held bound. Under the term parties, in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defence, or to *control* the proceedings and to appeal from the judgment. This right involves also the right to *adduce testimony* and to cross-examine the witnesses on the other side. Persons not having these rights, are regarded as strangers to the cause.'' Quoting from Greenleaf: 'Parties, in the larger sense, are all persons having a right to *control* the proceedings, to make defence, to *adduce* and cross-examine witnesses, and to appeal from the decision, if an appeal lies.' 1 *Greenleaf on Evidence, sec.* 535.

"*All* these privileges, (not any one of them,) are essential to the assertion and protection of private rights, and the investigation of the truth. Only, therefore, those who have enjoyed them *collectively* should be concluded by a decision, judgment or decree." *Cecil vs. Cecil,* 19 *Md.,* 79, 80.

The demurrer admits that the appellants had neither the right, nor the power, to control the proceedings, in which the decree relied on was rendered.

In all of the cases, in which one not a party to the record, was held bound by the judgment, he either exercised such control, or by reason of his relation to some party of record, was *entitled* to do so.

In *Robbins vs. Chicago City,* 4 *Wallace,* 657–672, and in *Chesapeake & Ohio Canal Co. vs. County Commissioners of Alleghany Co.,* 57 *Md.,* 201, those who were held bound by the judgment, were the persons for whose default the judgment was rendered, from whom the party sued had the right and intended to seek indemnity. For that reason, the person who was bound to indemnify the defendant on the record, had the right to *control* the defence.

In *McKinzie vs. B. & O. R. R. Co.,* 28 *Md.,* 161, Mantz and Byrne were the principals; McKinzie held the iron

in controversy as their agent. The prayers assumed that Mantz and Byrne, the real principals, had controlled the proceedings, in the name of McKinzie, who, though nominally and technically a defendant, had no interest in them.

Wharton says the test is whether the person against whom the judgment is invoked, was entitled to *control* the proceedings. 1 *Wharton on Ev.*, sec. 764; *Jackson vs. Griswold*, 4 *Hill*, 522–530–1.

Summons for witnesses, on behalf of the defendant in the equity suit, could only be issued at his instance. He could not cause himself to be summoned. The appellants could not, in his name or otherwise, compel him to testify. *Gambrill, et al. vs. Parker, et al.*, 31 *Md.*, 4.

The equitable plaintiff might have made the appellants parties to the proceeding to set aside the release. If he had done so, they would have had an opportunity to defend themselves, and have had no right to complain of a decree, if rendered against them. *McClellan and Wife vs. Kennedy, et al.*, 8 *Md.*, 230, 252–3.

It was the duty of the equitable plaintiff to give the appellants reasonable notice of his intention to repudiate the release, not to hold, to their prejudice, the property he had received as a consideration for it, until it had become worthless. *Roberts, et al. vs. Woven Wire Mattress Co.*, 46 *Md.*, 386.

The plaintiff joined issue with the appellants, as to their averment that it had been so improperly retained, as against them, that issue was not involved in the equity proceedings, or in the demurrer. The evidence applicable to it was improperly excluded, and the prayer, in reference to it, improperly rejected.

The Court erred in allowing the record to be encumbered and the expense of the case to be increased, by receiving evidence not applicable to any issue involved in it.

Parr and Cockey *vs.* State, use of Cockey.

*Thomas S. Baer*, and *John P. Poe*, for the appellee.

The great preponderance of authority in this country is, that the judgment against the principal is always *admissible* against the sureties, and is *conclusive* against them in the absence of allegations of fraud or collusion, or clear mistake in the obtaining of it.

This is the doctrine laid down by the Supreme Court of the United States, and the highest tribunals of the States of Massachusetts, New York, Pennsylvania, Connecticut, Illinois, Indiana, Missouri and other States.

It is sustained by far the larger number of adjudicated cases. *Stovall vs. Banks*, 10 *Wallace*, 583; *Washington Ice Co. vs. Webster*, 125 *U. S.*, 426–446; *McLaughlin vs. Bank of Potomac, et al.*, 7 *How.*, 220–230; *Heard vs. Lodge*, 20 *Pick.*, 53; *Garber vs. Commonwealth*, 7 *Pa. St.*, 265; *Casoni, et al. vs. Jerome*, 58 *N. Y.*, 315; *Willey vs. Paulk*, 6 *Conn.*, 74; *Salyer vs. State*, 5 *Ind.*, 202; *Housh vs. The People, &c.*, 66 *Ill.*, 178; *Martin vs. Tally*, 72 *Ala.*, 23; *Irwin vs. Backus, et al.*, 25 *Cal.*, 219; *Taylor vs. Hunt's Ex'r, et al.*, 34 *Mo.*, 205; *Charles vs. Hoskins*, 14 *Iowa*, 471; 1 *Herman on Estoppel*, secs. 159, 160, 161.

In this State it was first held, in *Beall vs. Beck*, 3 *H. & McH.*, 242, that the record of the judgment against the principal was not admissible against the sureties.

This case was overruled in *Iglehart vs. State*, 2 *G. & J.*, 235, where the Court of Appeals determined that the judgment was *prima facie* evidence against the sureties, following *Drummond vs. Presstman*, 12 *Wheat.*, 519, where the Supreme Court had expressly refused to follow *Beall vs. Beck*, 3 *H. & McH.*, 242.

As the Supreme Court in *McLaughlin vs. Bank of Potomac, et al.*, 7 *How.*, 220; *Stovall vs. Banks*, 10 *Wall.*, 583, and *Washington Ice Co. vs. Webster*, 125 *U. S.*, 446, have determined that, in saying, in the case in Wheaton, that the record of the judgment against the principal is *prima facie* evidence, they mean that it is not absolutely con-

clusive, but can be impeached for fraud or collusion, there is nothing in the case in 2 *Gill & Johnson,* in this Court, founded upon the case in Wheaton, to prevent this Court from asserting the doctrine established by the later cases in the Supreme Court.

Whatever may be the law as to the effect upon the surety of a judgment obtained against the principal, where the obligee in the bond sets up the judgment in a suit against the surety as establishing the amount of the principal's obligation, or that he has assets, this question is not presented here. The surety here sets up a release given to the principal not to himself. He is only entitled to the benefit of the release, because "it would be a fraud upon the principal debtor to profess to release him, and then to sue the surety, who, in turn, would sue the principal." That this is the principle which enables the surety to plead the release to the principal, is evident from the fact that the creditor can undoubtedly release the latter and reserve his right to sue the surety. All the authorities sustain this proposition. The surety is not a party to the release, and does not contribute to the consideration for which it is given. It is really for the benefit of the principal that he is allowed to plead it, because if he is sued as surety and made to pay, he can have recourse against his principal. It follows that, if the principal is not entitled to the benefit of the release, the surety cannot be. As to the principal, it has been determined that the release was void, *ab initio,* for fraud. He cannot plead it—upon what ground can the surety do so? *De Colyar on Guaranties and Principal and Surety,* 364–366; *Nevill's Case, L. R.,* 6 *Ch. App.,* 47; *Brandt on Suretyship,* sec. 123; *Byles on Bills,* page 190; 2 *Amer. Lead. Cases,* 474; *English vs. Darley,* 2 *Ames' Cases on Bills and Notes,* 120.

Upon the replication and third rejoinder, facts appear which bind the defendants in this case as parties to the

suit in which the decree was obtained setting aside the release. It is true that they were not parties of record, but this is not necessary in order for them to be held as parties. In the language of this Court, in *C. & O. Canal Co. vs. Co. Comm'rs of Alleghany Co.*, 57 *Md.*, 212, quoting the Supreme Court: "Parties in that connection include all who are directly interested in the subject-matter and who had a right to make defence, control the proceedings, examine and cross-examine witnesses, and appeal from the judgment." In that case a suit had been brought and judgment recovered against the County Commissioners to whom the Canal Co. was responsible over. The Court say that, "the early written notice to the appellant, given by the appellee, the appearance of the appellant's regular attorney in the suit, his participation in the trial, the presence of two of appellant's directors at the trial, and their assistance in selecting the jury, and upon the witness stand, was sufficient" to "render the judgment in that case conclusive in the second suit."

This principle that parties who have an interest in a suit, who are notified of it, and participate in it, are bound by its result, is clearly laid down in the authorities. *Chesapeake & Ohio Canal Co. vs. County Comm'rs of Alleghany Co.*, 57 *Md.*, 201, 224, 225; *McKinzie vs. B. & O. R. R. Co.*, 28 *Md.*, 161-174; *Cecil vs. Cecil, et al.*, 19 *Md.*, 72; *Robbins vs. Chicago*, 4 *Wallace*, 672; *Freeman on Judgments*, sec. 180; *Taylor on Evi.*, sec., 497; 1 *Greenleaf on Evi.*, (12th Ed.), 559; *Bigelow on Estoppel*, 98, 99; *Stoddard vs. Thompson*, 31 *Iowa*, 80-82; *McNamee vs. Moreland*, 26 *Iowa*, 96-112, 113; *State, use, &c. vs. Colerick, et al.*, 3 *Ohio*, 487.

ALVEY, C. J., delivered the opinion of the Court.

This is an action on a guardian's bond brought against the principal and sureties for the use of the ward, and the

case is here on the appeal of the sureties alone; the principal not appearing to have made defence to the action. The principal questions in the case arise on the pleadings, and hence it is necessary, to an intelligible understanding of the questions and how they are presented, that we state the pleadings with some fulness.

The declaration sets forth the condition of the bond; the settlement by the guardian in the Orphans' Court of an account showing a balance in his hands due the ward of $10,591.30; the fact of the arrival at age of the ward; and assigns as a breach of the condition of the bond the failure of the guardian to pay over to the ward the sum of $7,707.97 of said balance, alleged still to be due and owing.

The defendants, the sureties in the bond, filed three pleas. 1. That the guardian did not settle in the Orphans' Court any such account as that alleged in the declaration. 2. That after the ward became twenty-one years of age, he executed and delivered to the guardian a full and complete release of all claims against him as guardian. And 3. That after the ward became twenty-one years of age, in consideration of the transfer to him by his guardian of certain valuable property, he executed and delivered to his guardian a full release of all claims against him as guardian; and that to the prejudice of the defendants as sureties, the ward took possession of and title to said property, while it was of large value, and did not repudiate said release, or seek to have it set aside, or notify the defendants of any objection thereto, or of any claim against them, under said bond, until after said property had become utterly worthless.

The plaintiff joined issue on the first plea; and, by way of replication to the second and third pleas, alleged that the ward was induced to execute the release mentioned in said pleas by the fraud and fraudulent representations of the guardian; that, as soon as the fraud

was discovered by the ward, he filed a bill in equity in the Circuit Court of Baltimore City against said guardian to have the said fraudulent transfer annulled, and said release vacated and set aside; that the defendants, as sureties of the guardian, were notified of the filing of such bill in equity, and that they employed counsel to appear and defend the said case, and were represented by such counsel throughout the entire proceeding, and that they paid the fees of such counsel; that through their counsel they cross-examined the witnesses for the plaintiff, and produced and examined witnesses on their own behalf, and paid the costs of taking such testimony; that counsel so employed by them argued the case in the Circuit Court, and that, after the decree, which declared said release to be null and void, and adjudged and directed the guardian to pay to the said ward the sum of $7,707.97, with interest thereon from the 27th of November, 1880, the defendants, by their counsel, prosecuted an appeal from such decree to the Court of Appeals, and that they paid the costs of such appeal; that the counsel so employed argued the case in the Court of Appeals, and that said decree, so appealed from, was in all respects affirmed by the said Court of Appeals; and so the plaintiff avers that the defendants, in consequence of such notice to them of said proceedings, and of their participation therein, became parties to said cause, and are conclusively bound by said decree to the same extent that the said guardian, Edward D. McConkey, is bound thereby; and the plaintiff pleads and relies on said final decree as a conclusive adjudication, estopping the defendants from setting up the matters and things set forth in their said second and third pleas.

To this replication there were three rejoinders. 1. That the said ward was not induced to execute the release mentioned, by false and fraudulent representations of the guardian. 2. That the ward did not, as soon as he dis-

covered the alleged fraud by which the release was procured, file his bill in equity against the guardian to have the transfer therein referred to annulled, and the release vacated and set aside. Upon these two rejoinders issues were joined.

By the third rejoinder to the replication, the defendants aver that the counsel employed by them to defend said cause was employed to do so in the name and on behalf of the guardian, Ed. D. McConkey, the only defendant in said cause; that said counsel was only permitted by said guardian to make, and did only make, defence therein in the name, under the control and as the representative of the said guardian; that the present defendants were not represented by such counsel throughout said proceedings, but that, as counsel of the guardian, and not of these defendants, said counsel produced witnesses on behalf of the guardian, cross-examined witnesses produced by the plaintiff, took an appeal, and argued the case in the Court of Appeals, and advanced the money due by the guardian to pay the costs of taking testimony and costs of the appeal. And they aver that they did not, and could not, control the defence in said proceedings, or in any of them; that if they could have controlled the defence in said proceedings, they could and would have procured competent testimony, material to the issues involved in said proceedings, and that the said decree would not have been rendered; and that, therefore, they did not become parties to said proceedings, and are not conclusively bound by said decree rendered therein.

To this rejoinder the plaintiff entered a general demurrer, which was sustained by the Court below, and judgment was entered on the demurrer for the plaintiff. Whether this demurrer was properly sustained, is the first question presented on this appeal.

It may be stated as a well settled general rule of pleading that, whenever a *material fact well pleaded* is

passed over by the adverse party *without denial*, whether it be by pleading in *confession and avoidance*, or by *traversing some other matter*, or *by demurring in law, it is thereby*, for all purposes of pleading at least, *conclusively admitted*. Or, as stated by the Queen's Bench, such "an admission made in the course of pleading, whether *in express terms*, or by *omitting to traverse what has been before alleged*, must be taken *as an admission* for all purposes regarding the issue arising from that pleading, whether the facts relate to the parties or to third persons, provided the allegations so admitted be material." *Bingham vs. Stanley*, 2 *Q. B.*, 127; *Robins vs. Maidstone*, 4 *Q. B.*, 816. Therefore, if the plaintiff in his replication makes several averments, which the defendant does not traverse in his rejoinder, to which the plaintiff demurs, judgment shall be for the plaintiff; for what is materially alleged must be traversed, or it is always taken to be admitted. *Com. Dig.*, *tit. Pleader*, (*G.* 2.).

Now the plaintiff, in the replication to the second and third pleas of the defendants, expressly avers and sets forth the material facts of the filing of the bill in equity by the ward against the guardian; the obtaining the decree of the Circuit Court setting aside and vacating the release, and also decreeing the payment of a certain sum of money by the guardian to the ward; and that such decree was affirmed on appeal. It also further avers that the present defendants, as sureties of the guardian, were not only notified of the pendency of the suit, but that they actually employed counsel to defend the same, and that they were in fact represented in those proceedings by such counsel, who was paid by the defendants. These facts, most material in their character, have not been traversed or denied by the defendants in their rejoinder. They admit that they had notice of the pendency of the proceeding, and that they did in fact employ counsel to appear in and defend that cause; but

they aver that it was to be done in the name and on behalf of the guardian, and that the defence was so conducted. They traverse certain subordinate facts alleged in the replication, and then aver that they did not and could not control the defences of the equity suit, and that if they could have done so, the decree would not have been made; wherefore they aver that they were not parties to that proceeding, and are not conclusively bound by the decree therein. This latter averment is but the legal conclusion supposed to follow from the facts previously stated in the rejoinder, the correctness of which is not admitted by the demurrer.

Suppose, however, we concede for the moment the correctness of that conclusion, and treat the case as if the defendants here had not so far participated in the defence of the equity suit as to bind them *as parties thereto,* the question then is, upon the facts admitted in pleading, how are the defendants, as sureties of the guardian, affected by the decree that was passed?

In the first place, if there had been no question made as to the defendants' becoming parties to the equity suit, there could be no doubt of the effect of the decree, so far as the release is concerned. The release was given to the guardian as an acquittance by the ward; but if it was given under circumstances, whether of fraud or mistake, such as affected its validity, it was subject to be vacated and annulled as if it had never existed. Such turned out to be the case; and a Court of equity of competent jurisdiction, in a proceeding as between the parties to the instrument, has by decree declared such release to be null and void for causes existing at its date. It could no longer be regarded as a subsisting instrument to be used for any purpose. It could not be used as an effective instrument by the guardian himself, nor could it be used by any one standing in a relation of privity with or surety for him. Even as against strangers the

record of the equity proceeding and the decree thereon would be admissible to prove *rem ipsam,* and the legal incidents and consequences of the decree, though not to prove the facts upon which the decree is founded. *Key vs. Dent, Adm'r of Wood,* 14 *Md.,* 86, 98; *Barr vs. Gratz,* 4 *Wheat.,* 213, 220. This principle is stated and fully illustrated by a large collection of cases, in *Notes* 26, 27 *and* 85 *by Cowen and Hill to* 4 *Phill. Ev., pages* 43, 45 *and* 170, *Ed. of* 1850. The principle is also very clearly stated in 2 *Starkie's Ev.,* 182, 184. But, by reason of the relation the defendants bear to the principal in the bond, they do not occupy the position of mere strangers to the operation of the decree. And the release having been vacated and annulled, and the defendants not being able to invoke or in any manner avail themselves of it as a subsisting instrument in their defence, it is very clear that the issues in fact made on the first and second rejoinders to the plaintiff's replication were wholly immaterial; for if the facts therein traversed were found for the defendants, they could not rehabilitate, and restore the original vigor and effect of the release, so as to entitle the defendants to plead or use it in evidence, as if it had never been vacated and set aside.

Then, with respect to that part of the decree which adjudicates and directs the payment of a certain sum of money by the guardian to the ward, the principle is well settled, in this State at least, that such recovery against the principal in the bond, even though the sureties were no parties to the suit, is *prima facie* binding upon the sureties; and that they can only relieve themselves of such binding effect of the recovery against the principal, by showing that the amount recovered was in excess of the amount which the plaintiff in the judgment or decree was really entitled to recover, or that he was not entitled to recover at all. *Iglehart vs. State, use Mackubin,* 2 *G. & J.,* 235, 245. The Supreme Court of the United States

Parr and Cockey *vs.* State, use of Cockey.

have held in *Stovall vs. Banks*, 10 *Wall.*, 583, that a recovery by a decree against an administrator, the principal in the bond, of a certain amount of money, is binding and conclusive against the sureties as well as the principal, and that the sureties would not be allowed to attack the decree collaterally. But this would seem to be giving to the recovery against the principal an effect as against the sureties greater than this Court has hitherto allowed.

But the broader question is presented on the facts admitted by the pleading, and that is, whether the present defendants did not so far participate in the defence of the equity suit as to make themselves parties in legal effect, though not technical parties of record, and as such become bound and concluded by the decree?

It is certainly true, as a general rule, that no one can be conclusively bound by a judgment or decree unless he be a party to the suit, or be in privity with the party, or possesses the power of making himself a party. But it does not require a person to become a technical party of record in order to be bound and concluded by the result of the suit. *State, use Charlotte Hall School vs. Greenwell*, 4 *G. & J.*, 407, 415. If he be interested in the subject-matter of the suit, as were the present defendants in the equity suit, and does in fact appear and exercise the right of participating in the defence, as if he were a technical party upon record, he cannot afterwards be heard to contend that he is not bound and concluded by the judgment or decree, to the same extent that he would have been if made a technical party to the proceeding. The law requires that there should be an end of litigation; and where a party has had a full and fair opportunity presented of making all the defences at his command to an asserted right or claim, it is quite immaterial that he has elected to appear and defend in the name of another who is a party of record, rather than cause himself to be,

made a co-defendant in the proceeding.    It is no answer
for the present defendants to say that they only defended.
the equity suit in the name of the guardian, the princi-
pal in the bond, and that they could not and did not con-
trol the defence throughout.    They admit that they em-
ployed the only counsel who appeared in the case for the
defence, and that defence was made throughout, though
in the name of the guardian.    Their relation to the de-
fendant of record, and their immediate interest in the
subject-matter of the suit, entitled them, as matter of
absolute right, to appear and make all lawful defences
that could be made, and we must assume that such de-
fences were made, as it was the duty of the defendants
then and there to make them.    At any rate, having had
a legal opportunity to make their defences, they cannot
be heard to say that they did not avail themselves of it.
The authorities are clear in support of that proposition.
*McKinzie vs. Baltimore & Ohio Railroad Co.*, 28 *Md.*,
161; *Ches. & Ohio Canal Co. vs. Com'rs of Alleghany County*,
57 *Md.*, 201; *Chicago City vs. Robbins*, 2 *Black*, 418; *Rob-
bins vs. Chicago City*, 4 *Wall.*, 657.

We are therefore clearly of opinion, that, in any aspect
in which it may be considered, the rejoinder failed to
make a legally sufficient answer to the replication; and
that the Court below was quite right in sustaining the
demurrer and entering judgment thereon for the plaintiff.

We come now to consider the case as presented on the
exceptions.    The case was tried before the Court without
the aid of a jury, and at the trial there were five bills of
exceptions taken by the defendants.    The first was taken
to the reading of the guardian's bond in evidence.    This,
though quite unnecessary and was in support of no issue
joined, could do no harm to the defendants, and was
therefore altogether immaterial.

The second exception was taken to the admissibility
in evidence of the guardian's final account stated in the

Parr and Cockey *vs.* State, use of Cockey.

Orphans' Court, with the release referred to therein, executed by the ward to the guardian, coupled with an offer to follow up such evidence by the production of the record of the equity proceedings of the ward against the guardian, and the decree of the Court of Appeals, to show that the release had been vacated and annulled. It follows from what we have already said in regard to the effect of the decree upon the release, that the Court was clearly right in admitting this evidence. Nor was there any error in the ruling as stated in the third exception. The record of the proceedings in the equity suit, and the decree of affirmance passed thereon, were binding on the defendants, as we have already shown; and there could be, therefore, no valid objection to their being read in evidence to the Court.

The fourth exception was taken to the refusal by the Court to admit certain testimony offered by the defendants, to show the value of the stock mentioned in the decree, at the time of its transfer to the ward, and its subsequent depreciation; and to disprove fraud and misrepresentation in obtaining the release from the ward, upon the transfer of the stock to the latter. But, as we have already shown, the issues made by the first and second rejoinders to the plaintiff's replication were wholly immaterial; and therefore, there could be no error in excluding evidence offered by the defendants to support such issues, in the face of the decree which had annulled the release, and decreed the stock to be retransferred to the guardian. If such issues had been found with the defendants, they would have constituted no bar to the right of the plaintiff to recover the amount shown to be due the ward by the account stated in the Orphans' Court, and which amount had been solemnly decreed to be paid by the guardian to the ward. Moreover, the very testimony, thus offered by the defendants, goes to show most conclusively, that the guardian himself did

not actively participate in the defence of the equity suit, but that he gave over and confided the entire and exclusive defence of the case to his sureties, the defendants; and that being shown, the latter certainly could introduce no evidence for the purpose of impairing the operation of or in any manner derogating from the full force and effect of the decree, against the making of which they had defended.

The fifth exception was taken to the refusal by the Court to accept three prayers offered by the defendants as containing the law to govern the case. These prayers are founded upon theories that we have already examined in a former part of this opinion, and have shown to be incorrect as applied to this case. It is unnecessary to repeat what we have already said in regard to the propositions made by these prayers; it is sufficient to say that there was no error committed in rejecting them by the Court.

Finding no error we shall affirm the judgment.

*Judgment affirmed.*

(Decided 12th June, 1889.)