# IRA L. FETTERHOFF vs. JOHN A. SHERIDAN et al.

*Attachments—Fund Claimed by Two Parties—Interpleader—Bona Fides of Assignment—Notice of Attachment by Garnishee to Claimant.*

When a creditor has assigned the debt, the *bona fides* of the assignment may be determined under an attachment laid in the hands of the debtor as garnishee.

When the debt attached in the hands of the debtor is also claimed by an assignee of the original creditor, it is the duty of the garnishee to give notice of the attachment to the assignee and call upon him to protect his rights. If such notice is given and the fact of the assignment is called to the attention of the Court, but judgment of condemnation is nevertheless rendered against the garnishee, he will be protected against the claim of the assignee.

F. owed a sum of money to G. who assigned the debt to S. The assignee S. sued F. and obtained a judgment. M. held a judgment against G. and laid an attachment thereon in the hands of F. claiming that the assignment from G. to S. was fraudulent and void. F. then filed the bill in equity in this case, offering to pay the amount of the debt into Court and asked that the proceedings against him at law be enjoined and that the parties be required to interplead. *Held*,

1st. That in the attachment suit F. should plead the facts and give notice of the attachment to S. calling upon him to defend his assignment, and if S. fail to appear in the attachment and defend and judgment of condemnation be rendered against F. then S. would be bound by this result; and consequently it is not necessary to resort to a bill of interpleader.

2nd. That under Code, Art. 9, sec. 17, authorizing the attachment of debts due upon judgment to the defendant in the attachment and the payment of the money into Court, if the money in this case be paid by F. into Court, then S. would be enjoined from proceeding with an execution on his judgment pending the determination of the attachment case.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*B. B. Shreeves,* for the appellant.

1. The appellant has made out a sufficient case of interpleader, as he was compelled to come into a Court of equity as a stakeholder to protect himself against a possible double payment of the fund in his hands, claimed by two conflicting claimants. He did not know to whom to pay the fund. If Mottu & Company should succeed in setting aside the assignment from Geist to Sheridan, he would have no protection in case he paid the money to Sheridan under the judgment obtained by him. Fetterhoff had knowledge that Mottu & Company claimed that the assignment from Geist to Sheridan was a fraudulent one, and if he paid the money to Sheridan under the judgment, he would pay it at his own risk subject to the result of the attachment proceedings. If the assignment were stricken down in these proceedings as being fraudulent, he could not plead the payment in bar. He had only one recourse to protect himself, and that was to come into a Court of equity and offer to pay the money into that Court, and let the other parties settle between themselves their conflicting claims.

2. This bill clearly comes under the general rule of interpleader, that where two or more persons claim the same fund, by different or separate interests, and the person holding the fund, not knowing to which of the claimants he ought to pay it, and fears he may have to pay it again, if he pays it to one, he may file a bill of interpleader. 2 *Daniells' Chancery Pl. and Practise,* p. 1560, 6th Amer. Edition ; *National Park Bank* v. *Lanahan, Trustee,* 60 Md. 514; *Miller's Equity,* 824. Fetterhoff is clearly in the position where he cannot pay the fund in his possession to Sheridan with safety. If he pays to Sheridan, Mottu & Co., if they succeed in setting aside the assignment from Geist to Sheridan, will obtain a judgment against Fetterhoff for the amount he paid to Sheridan, thus compelling him to pay the amount again.

3. Has the appellant lost his right to file a bill of interpleader by contesting the claim at law ? It is a well-settled principle that in order to entitle a person to file a bill of interpleader he must come into a Court of equity offering to bring

into that Court a certain and definite sum admitted to be due and owing by him.   2 *Daniells' Chancery Pl. and Practise*, p. 1560, Note 1, 6th Amer. Edition.   He must be a mere stakeholder with no interest in the conflicting claims.

He should be in the position to say : " I admit I owe a certain sum, but I do not know to whom to pay it.   I am ready and willing to deposit it in Court, and whoever is entitled to it, may take it, I have no interest in it."   Otherwise he would not be a mere stakeholder.   *Cross* v. *Memphis & Charlestown R. R. Co.*, 96 Ala. 450; *Home Life Insurance Co.* v. *Caulk Bros.*, 86 Md. 389.   At no time until the verdict in the Superior Court was Fetterhoff in this position.   He disputed the amount of the claim, and was successful in reducing it by over $150.   Before the verdict he could not file a bill of interpleader in a Court of equity, as the Court would have been compelled to determine the amount due by him.   It would have compelled the Court to litigate between him and the defendants.   He would then be no longer a mere stakeholder. He would have had an interest in the funds.   This would have been fatal to his bill.   He never was in a position until after the verdict in the Superior Court, to go into a Court of equity with a certain and definite sum in which he had no interest, except that of a mere stakeholder asking the Court to be protected against the conflicting claims.   *Exrs. of Lozier* v. *Admrs. of Van Sann*, 3 N. J. Eq. p. 331.

4. Where the *quantum* of the demand is disputed a person has a right to contest this at law and after the *quantum* has become certain by a verdict at law, to file a bill of interpleader in a Court of equity, if he can not pay the money without subjecting himself to a possible double payment on account of conflicting claims.   *Hamilton* v. *Marks*, 5 De Gex and Smale, 641; *Nelson* v. *Barter*, 2 H. & M. 334 and 344.

5. Fetterhoff could not have pleaded in abatement the attachment issued upon the judgment obtained by Theodore Mottu & Company against Henry H. Geist in the Baltimore City Court, in the proceeding of John A. Sheridan against himself in the Superior Court of Baltimore City, as the cause

of action and parties were different.  *Poe Pleading and Prac-
tise*, sec. 595; *State use of Bashe* v. *Boyce*, 72 Md. 142.

The pendency of an attachment is no defense to an action
against the garnishee by an assignee of the defendant.  *Drake
on Attachments*, 7 Amer. ed. sec. 703a; *North British & Mer.
Ins. Co.* v. *First Nat'l. Bank*, 22 S. W. 992.   The attachment
suit being *res inter alios acta* would not conclude the rights of
Sheridan, in case Mottu & Co. should be. successful.   Sheri-
dan could have still pursued his case against Fetterhoff in the
Superior Court, after the determination of the attachment case
in the City. Court, he not being a party would not have been
bound by its decision.   Thus Fetterhoff could secure no pro-
tection by the postponement of the suit of Sheridan against
himself in the Superior Court until after the trial of the at-
tachment case in the City Court.   *Funkhouse* v. *How*, 24 Mo.
44; *Harvey* v. *Great Northern Ry. Co.*, 50 Minn. 408, is not
law in the State of Maryland as will be seen from *Seevers* v.
*Clement*, 28 Md. 426; *Cole* v. *Flitcraft*, 47 Md. 312.

6. Nor could Fetterhoff question the validity of the assign-
ment from Geist to Sheridan, as he was not a creditor, but a
debtor.   His rights were not prejudiced.   He was a debtor
submitting to a Court the question of how much he owed after
the amount he owed had been determined by the Court, he
was as willing to pay to Sheridan as to Geist if the attach-
ment of Mottu & Company had not subjected him to a pos-
sible double payment.   *Fuhie* v. *Lindsay*, 8 Oreg. 477.

*Edward C. Carrington, Jr.*, and *Wm. Ewin Bonn*, for the
appellee, Sheridan.

The appellee, Sheridan, holding his judgment does not
stand on the same footing as Mottu & Company. · He has
gained his advantage and a Court of equity will not deprive
him of it.   It being conceded that he has been guilty of no
fraud or deceit upon the appellant, but obtained his judgment
fairly and under such conditions as to have afforded every op-
portunity to the appellant to shape his defense and actions as
to him seemed proper or desirable.   After the plaintiff has

permitted such judgment to have been rendered against him by reason of his own neglect in making proper defense, he will not be permitted to require one who has thus acquired the advantage to contend with the attaching creditors. *Home Life Ins. Co.* v. *Caulk*, 86 Md. 390; *Mitchell* v. *N. W. Man. Co.*, 26 Ill. Appeals, 295; *Haseltine* v. *Brickey*, 16 Gratt. (Va.), 116. The appellant must be an indifferent stakeholder and the slightest interest in the result of the interpleader suit prevents him filing the same. *Bank* v. *Lanahan, Trustee*, 60 Md. 477.

In the case at bar, the appellant's interest in having the Sheridan judgment defeated precludes the filing of the bill and alone is sufficient to justify the sustaining of the demurrer and the dismissal of the bill. Whether Sheridan obtained his judgment because of the neglect of the appellant to avail himself of his legal rights or through the appellant's mistake or even through the erroneous action of the trial Court, it matters not. A Court of equity will not relieve the appellant from the consequences of a judgment arising from either of such causes. The appellant has had his day in Court, might have made his defense at law, and if he did not comprehend his rights or know the law, a Court of equity has no power to interfere. Neither can a Court of equity correct errors in judgment of a Court of law. *Ahern* v. *Fink*, 64 Md. 164; *Cheever* v. *Hodgson*, 9 Mo. Appeals, 565; *Yarborough* v. *Thompson*, 3 Smed. & M. (Miss.) 291; *Mitchell* v. *N. W. Man. Co.*, 26 Ill. Appeals, 295; *Blair* v. *Hilgedick*, 45 Minn. 24; *Home Life Ins. Co.* v. *Caulk*, 86 Md. 385; *Haseltine* v. *Brickey*, 16 Gratt. (Va.) 116.

The bill filed in this case, is a formal bill of interpleader, but whether so considered, or as a bill in the nature of a bill of interpleader, does not aid the appellant. The appellant in his bill has shown no equitable grounds for relief. He has given no reason in his bill why he did not prevent judgment being entered against him, or why if the same was erroneously entered, he did not appeal.

Viewed in any light, it must be seen at once that the appel-

lant's purpose in filing this bill is to relieve himself from the burden of a judgment of a Court of law, and to have a Court of equity review and set aside the judgment. *Home Life Ins. Co.* v. *Caulk*, 86 Md. 391; *Ahern* v. *Fink*, 64 Md. 164; *Windwart* v. *Allen*, 13 Md. 196.

The case of *Cheever* v. *Hodgson*, 9 Missouri Appeals, 567, very clearly sets forth the principles of law in the following language. It may very well happen that two judgments may be rendered against a party on the same cause of action ; that this may be without any fraud, deceit or want of perfect good faith on the part of the plaintiffs in the several actions, and the defendant may have no standing in a Court of equity to restrain the collection in full of each judgment. Thus, if two judgments are rendered against a garnishee, one in favor of an attaching creditor and the other in favor of the assignee of the note, the note being in fact the foundation of both judgments, and the garnishee having defended both cases, he cannot in a Court of equity, by bill of interpleader, obtain a perpetual injunction against either. See also *Yarborough* v. *Thompson*, 3 Smed. & M. 291.

Upon no aspect of the case, nor at any time, had the appellant any right to come into a Court of equity to obtain either a decree of interpleader or an injunction against the defendant Sheridan. The appellant had full opportunity to make his defense and have prevented himself being exposed to a double liability. If the appellant is now exposed to the risk of a double liability it is not because of anything done by said Sheridan or the attaching creditors, nor in consequence of the institution of the suits, but arises from the appellant's own free election to allow the trial of said Sheridan's suit against him, upon his several pleas to the merits, instead of abating said suit by proper plea. The danger of a double liability which now threatens the appellant, arises from mistake or ignorance on his part. The appellee, Sheridan, does not know why the appellant elected to defend himself as he did, and only pursued his legal remedies and met the appellant upon the grounds selected by said appellant and secured his

judgment and advantage therefrom. It was the duty of the appellant to plead the attachment case of Mottu & Company in abatement of the Sheridan suit. He did not do so and must abide the result. *Peninsular Co.* v. *Merritt,* 90 Md. 592; *Brown* v. *Somerville,* 8 Md. 444; *Harvey* v. *Great Northern Ry. Co.,* 50 Minn. 408; *Grosslight* v. *Crisup,* 58 Mich. 531.

Boyd, J., delivered the opinion of the Court.

This is an appeal from an order of the Court below sustaining a demurrer and dismissing the bill of complaint filed by the appellant against the appellees. The bill alleges that John A. Sheridan as assignee of Henry H. Geist, obtained a judgment for $381.72 against the appellant on the 21st day of February, 1901, that Theodore Mottu & Company obtained judgment for $689.18 against Geist and issued an attachment thereon, which on the 14th of January, 1901, was laid in the hands of the appellant to affect the funds claimed by Sheridan, it being claimed that the assignment from Geist to Sheriday was fraudulent. The appellant then filed this bill tendering payment of the amount due by him into Court, asking that the parties be required to interplead and also that they be enjoined from prosecuting their actions at law. No objections have been urged before us as to the form of the bill, but it is contended that it does not present a case which calls upon a Court of equity to afford relief to the appellant.

We do not see any occasion for such relief as is sought in this case. It cannot be contended that a judgment debtor in whose hands the funds so due by him have been attached can, as a rule, require the judgment creditor and the plaintiff in the attachment case to interplead, and there is nothing in the facts alleged in this bill which takes the case out of the general rule. It is true that the attachment of Theodore Mottu & Company was issued on a judgment against *Geist,* while the judgment against the appellant was in favor of *Sheridan.* But Sheridan's claim against the appellant was under an assignment from Geist and the attaching creditors seek to subject it to the payment of their judgment on the ground that the

assignment was fraudulent.    There can be no doubt that in this State the *bona fides* of the assignment of a debt can be inquired into under an attachment laid in the hands of a debtor, as garnishee.    Among other cases so holding are *Stock-bridge* v. *Fahnestock*, 87 Md. 136; *Luckemeyer* v. *Seltz*, 61 Md. 324, and *Green* v. *Early*, 39 Md. 223.    When the attachment is so laid the garnishee can set up in his answer the fact of the alleged assignment to a third person and, if the garnishee is innocent of fraud or collusion, the Court should protect him as far as possible and not permit judgment of condemnation to be entered against him unless it is clearly shown that the assignment was fraudulent or invalid and care should be taken to avoid subjecting the garnishee to double liability.    The garnishee must, however, act with reasonable diligence and when he is notified that the object of the garnishment is to reach the claim alleged to have been assigned, he should promptly inform the assignee and call upon him to protect the assignment.    The assignee can then come into the case as claimant and assert his title, either by plea, under the old prac-tice, or by petition under the statute, *Kean* v. *Doerner*, 62 Md. 475.

If the assignee be notified by the garnishee of the attach-ment and fail to go into Court as claimant, or to defend in the name of the garnishee, after duly indemnifying him against costs, and if the garnishee bring the fact of the alleged assign-ment to the attention of the Court, but judgment of condemna-tion is nevertheless rendered against him, then the garnishee will be protected as against the assignee.    It was held as early as the case of *Ranahan* v. *O'Neale, Jr.*, 6 G. & J. 298, that where the real owner had knowledge of the attachment of his property as that of another party, but did not defend it and the sheriff afterwards sold it under a *fieri facias* issued on a judgment of condemnation duly rendered thereon, the sheriff was not liable to the owner.    In *Trieber* v. *Blocher*, 10 Md. 14, it was said that, " under our attachment system the owner of the goods attached, if he has knowledge of the attachment and the taking of his property, whether regularly summoned

or not, is *compelled* to come in and claim the property in order to prevent a judgment of condemnation, and if he fails to do so he has no remedy against the sheriff for selling it under a *fi. fa.* upon a judgment of condemnation." While those cases only involved the liability of officers of the law acting under process of courts of competent jurisdiction, they reflect upon the principle applicable to this case.

Inasmuch as creditors are permitted to inquire into the validity of assignments by attachments which may be laid in the hands of the garnishees, protection should be afforded the garnishees in such cases and they should not be unnecessarily subjected to the risk of having to pay the same debt twice. When therefore the assignee is authorized to come into Court and defend his claim, as he is in this case, there would seem to be no good reason for holding the garnishee liable to him, if judgment of condemnation be rendered against the garnishee for the same debt—provided he had informed the Court of the assignment and had given notice to the assignee of the attachment. When the latter can be done, it should be, or if the circumstances be such that notice cannot be seasonably given to the assignee then the garnishee must, if he is aware of the assignment, inform the Court of it and be diligent in defending the rights of an absent assignee. A garnishee ought always, in justice to the defendant and the claimant of the property sought to be attached, if there be any known to him, as well as for his own protection, give notice of the attachment to them. There may be some cases in which that is not necessary, but it is certainly the safer rule to adopt. In the case now before us judgment was obtained against the appellant by Sheridan as the assignee of Geist. Theodore Mottu & Company seek to subject the amount due by the appellant on that claim to the payment of the debt due to them by Geist and allege that the transfer to Sheridan was fraudulent. If that be true then Mottu & Company should not be deprived of their right to have the debt applied to their claim merely because it stands in the name of another party, nor should the appellant be required to pay it twice, but he has ample means

of protecting himself at law. He can set up the facts in the garnishee case and he can give notice to Sheridan to defend his claim. If he refuses to do so and judgment of condemnation is obtained against the appellant without his fault, he can be protected. Sheridan cannot with impunity stay out of the case and then say he was not a party to the proceedings and therefore was not bound by it. As we have seen, the law gives him the right to come into the attachment case and claim the credits attached and if he refuses to do so it will be at his peril. Our statutes make no special provision for a garnishee summoning a claimant in Court to defend, but, as he has the right to come in, if he has notice of the attachment it is his duty to take the burden himself and not unnecessarily subject the garnishee to it. If he refuses to do so he will be concluded by the result. While this precise question, as between a claimant and a garnishee, may not have been determined in this State, the principle applicable to it has been in a number of cases. In *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 161, which was an action of replevin, it was said: " A judgment to operate as an estoppel, must be upon the same subject-matter and between the same parties. The term 'parties,' however, is not restricted to those who appear as plaintiff and defendant upon the record. It includes those who are directly interested in the subject-matter of the suit, knew of its pendency and had the right to control and direct, or defend it." Or, as was said in *Albert* v. *Hamilton*, 76 Md. 304, " persons who are directly interested in the suit and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of their rights, are concluded by the proceedings as effectually as if they were parties named on the record." See also *State* v. *Greenwell*, 4 G. & J. 415; *Parr* v. *State*, 71 Md. 220; *Riley* v. *Bank*, 81 Md. 14.

Sec. 17 of Art. 9 of the Code authorizes the attachment of debts due the defendant upon judgments or decrees and provides "but an execution may, on application of any party to the Court rendering such judgment or decree, be issued for enforcing the payment thereof, notwithstanding the attach-

ment; provided the money payable on such judgment or decree be, in the said writ of execution, required to be brought into the said Court, to be by such Court preserved or deposited, or invested in stocks, to abide the event of the proceedings in such attachment." Although this judgment is in favor of Sheridan, the attaching creditors claim it belongs to Geist. All parties can be fully protected under this section, and they can agree that the money be paid into Court without an execution being issued. If Sheridan refuses to agree to that, and issues execution, he ought to be made to pay the costs thereof, if the appellant is ready to pay the money into Court without having an execution issued. If he proceeds to issue an execution regardless of this statute, then he should be enjoined, if the appellant informs the Court in which the attachment is pending of the facts, as Sheridan now undoubtedly has notice of it.

So without considering other grounds that might be mentioned, we think there was no reason for the interference of a Court of equity and the decree dismissing the bill will be affirmed.

*Decree affirmed, appellant to pay the costs.*

(Decided January 16th, 1902.)