BENJAMIN F. RODY, Administrator, Etc. *v.*
WILLIAM F. DOYLE, et al.

[No. 69, October Term, 1942.]

*Decided December 7, 1942.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, MARBURY, and GRASON, JJ.

*A. Earl Shipley* and *Michael J. Manley,* with whom was *Theodore F. Brown* on the brief, for the appellant.

*D. Eugene Walsh* and *F. Neal Parke* for the appellee.

MARBURY, J., delivered the opinion of the Court.

This bill of complaint was filed on January 25, 1940, by the appellant against the two appellees. It alleged that appellant's intestate, Matthew T. Doyle, who died January 8, 1940, had on December 16, 1939, deposited a sum of approximately $12,000 in the appellee bank in an account in the name of Matthew T. Doyle, in trust for himself and William F. Doyle, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor. It claimed that Matthew T. Doyle lacked the capacity to do this. The bill was for the purpose of setting aside the account, of securing to the appellant, as administrator, this money, of enjoining both of the appellees from disposing of it otherwise, and of enjoining its withdrawal from the

bank. The appellee Doyle answered on February 17, 1940, admitting the opening of the savings account, claiming that Matthew T. Doyle was entirely competent to open the same, denying that the appellant was entitled to it, and refusing to deliver it. The appellee bank also answered on February 17, 1940, stating that it was a disinterested party and setting up the circumstances under which the account was opened.

Testimony was taken in open court, commencing on March 10, 1941. The cashier of the appellee bank testified as to the circumstances of the transfer and stated that $11,000 was placed in a joint savings account as of November 27, 1939, and $427.71 on a joint checking account. This money had come from the Savings Bank of Baltimore. It was first taken by the appellee bank as a collection item and credited to the transient account when paid. The cashier's testimony in chief seems to be that the transfer from the transient account to these other accounts was made on November 27, but on cross-examination he said that the transient account was opened on December 18 and the joint accounts on December 22. It does not appear from the record that William F. Doyle testified, but his wife, Beulah Doyle, did. The court below filed an opinion and decree on June 14, 1941, determining that the two accounts were the property and estate of Matthew T. Doyle, deceased, and payable to the appellant as administrator. On August 9, 1941, an appeal was entered to this court by William F. Doyle. The case was heard here and the decree of the lower court was affirmed on April 8, 1942, in the case of *Doyle v. Rody*, 180 Md. 471, 25 A. 2d 457. On July 15, 1942, the appellant filed a petition for a writ of *fieri facias* against the appellees, stating that in spite of repeated demands, the defendants refused to turn over the funds. On the same day, the court ordered the writ to issue. On the following day, July 16, 1942, the appellee bank filed a petition or motion to strike out the order for the writ for the reason that it had filed an interpleader proceeding on December 6, 1941, and

"is this day paying into the hands of the Clerk of this Court the sum of $10,219.63 representing the fund." The appellant answered this petition setting up the fact that he had answered the interpleader in January, 1941, but no further proceedings in that case had been taken. The record contains the proceedings in the interpleader case, and from them it appears that on January 12, 1940, thirteen days prior to the filing of the original bill of complaint herein, a deposit account was opened with the appellee bank in the name of William F. Doyle, in trust for himself and Beulah Doyle in the usual form. At the time of the filing of the bill of interpleader, there was $11,229.71 in that account, of which the difference between that sum and $1,332.82, whose origin is not fully explained, came from the Matthew T. Doyle savings and checking accounts heretofore referred to. Although this transfer took place before the bill of complaint was filed in the case before us, it was not disclosed to the court by either of the appellees in their answers, or in the testimony given by the bank officials or by Beulah Doyle, who was one of the witnesses. The appellant did not know it. The lower court was not apprised of it, and was permitted to hear the case and file an opinion and decree disposing of an account which was no longer existent. An appeal was then taken to this court, and we affirmed the original decree, without any information of the change.

Had the facts about this account been brought to the attention of the appellant or of the court below, Beulah Doyle could have been made a party to the case, and her rights in the fund determined. Now the appellees attempt to render nugatory the action of the lower court and the action of this court and to request the appellant to try a new case in the interpleader proceedings because of Beulah Doyle's supposed rights.

The court below, after taking testimony, by order passed September 15, 1942, struck out the order of July 15, 1942, directing the issuance of the writ of *fieri facias*. The ground of this decision was that the original decree

of June 14, 1941, was not a money decree. From that order of September 15, 1942, this appeal comes here.

The preliminary question which must first be decided is whether the appellees, after permitting the original case to go to a decree against them without disclosing the full facts about the account, can now raise any defense, either technical or substantial, based on these undisclosed facts, to the execution of that decree.

In a case decided by this court more than fifty years ago, it was said through Chief Judge Alvey: "The law requires that there should be an end of litigation, and, where a party has had a full and fair opportunity presented of making all the defenses at his command to an asserted right or claim, it is quite immaterial that he has elected to appear and defend in the name of another, who is a party of record, rather than cause himself to be made a co-defendant in the proceeding. * * * At any rate, having had a legal opportunity to make their defenses, they cannot be heard to say that they did not avail themselves of it. The authorities are clear in support of that proposition." *Parr v. State,* 71 Md. 220, 235, 17 A. 1020, 1022.

In a later case, this court spoke of the doctrine so often recognized: "That persons who are directly interested in the suit, and have knowledge of its pendency, and who refuse or neglect to appear and avail themselves of their rights, are concluded by the proceedings as effectually as if they were parties named on the record." *Albert v. Hamilton,* 76 Md. 304, 25 A. 341, 343; *Riley v. First National Bank,* 81 Md. 14, 31 A. 585. This principle was applied to a witness in a case in which she was not a party and in which her actions were described as follows: "When she was upon the witness stand she did not mention or allude to any claim of hers upon the property, nor has she at any time in any manner, intervened in the suit, or asked to be made a party thereto, or set up any claim against the estate in controversy." *Williams v. Snebly,* 92 Md. 9, 48 A. 43, 48.

In another case this court was discussing the method a garnishee might use to protect himself. It was said that he could give notice to an assignee whose name was Sheridan and require him to defend the claim as against the attaching creditor, and in such case it was said: "Sheridan cannot with impunity stay out of the case, and then say he was not a party to the proceedings, and therefore was not bound by it." *Fetterhoff v. Sheridan,* 94 Md. 445, 454, 51 A. 123, 125. See also *Holt v. Moxley,* 157 Md. 619, 147 A. 596; *Myers v. Gordon,* 165 Md. 534, 170 A. 186; *Williams v. Messick,* 177 Md. 605, 11 A. 2d 472.

These cases deal for the most part with the estoppel of a person not a party to a suit, but with knowledge of it, who permits his rights to be determined, and then desires to have the case reopened. In their strict application to this case, they affect the interest of Beulah Doyle, with whose rights we are not here concerned. The question before us is not whether Beulah Doyle can now come in and have this case retried, but whether the appellees who were actually parties, who have had their day in court, who have had their case tried, can now come in and ask to have it retried because of facts in their possession and not disclosed which indicate a possibility that Beulah Doyle may have some rights. If Beulah Doyle, a witness in the case, under the authorities above quoted has no standing now to dispute the court's conclusion, how can it be contended that the actual parties to the case can take such a position for her? We think they cannot be heard to make any defense, technical or otherwise, on any such basis. They must obey the decree of the lower court, and they are subject to execution upon it.

An equitable estoppel operates to prevent "a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth." *Horn v. Cole,* 51 N. H. 287, 12 *Am. Rep.* 111; *Pomeroy's Equity Jurisprudence,* 5th

Ed., Vol. 3, Paragraph 802; *Maryland Casualty Co. v. Gates*, 290 F. 65, *certiorari* denied *Gates v. Maryland Casualty Co.*, 263 U. S. 708, 68 *L. Ed.* 517. The definition of equitable estoppel adopted by this court is that it "is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy." *Rodgers v. John,* 131 455, 462, 102 A. 549, 551; *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725; *Benson v. Borden,* 174 Md. 202, 198 A. 419.

The decision of the court below was not based upon any supposed rights of Beulah Doyle which might interfere with execution of the decree. It was, as we have shown, based upon his finding that the decree sought to be enforced was not in the strict sense a money decree. However this may be (and we do not pass upon it), the method of collection of the fund by the appellant is not important. We look to the substance and not to the form. The appellant is entitled to receive the fund mentioned in the decree free and clear of any claims of either of the appellees. Their only rights in the matter are to see that upon payment of the amounts set out in the decree, the decree against them is marked satisfied. They are not entitled to demand that they be protected against litigation from Beulah Doyle. If any such litigation should hereafter result, the appellant, and the fund which has been determined to be his, cannot be affected by it. The appellees are estopped from having such litigation determined in this proceeding or in any interpleader which includes the appellant. His rights to the fund have been finally settled and established.

The record shows that certain payments were made by one of the appellees out of this fund for a monument, funeral expenses, doctors' services, collateral taxes, etc.

These payments were irregular, and are subject to the approval of the court administering the estate of the deceased. That estate is not being administered in this proceeding. The decree in this case declares that the savings account of $11,000 and the checking account of $427.71 belong to the appellant "free, clear and discharged of any claim or demand of William F. Doyle, so far as the same may interfere with or in any manner affect the right or claim of said administrator to the possession thereof for the purpose of administration." That finally disposes of any right of the appellees or either of them to deduct anything from the fund before paying it over. It was stated in the argument by the appellant's counsel, that he had no objection to allowing the deduction of the named payments and to accepting in satisfaction of the decree of this case the balance which was paid into the interpleader proceeding. That is a matter which the parties may adjust between themselves if they see fit. We neither authorize it nor do we find any error in it. It is a practical adjustment which is frequently made to avoid litigation, and the parties may think it advisable to make such an arrangement in this case.

The appellees urge that William F. Doyle was a constructive trustee and should be permitted the right to deduct the amounts he has paid out, and that the equity court should retain jurisdiction, consolidate the interpleader with this case, and determine the rights of all the parties. That suggestion might have been sound had it been made before the rights of the appellant had been determined. The court below in its first hearing, however, did settle, as we have shown, the right of the appellant to the fund without any deduction. To now permit that question to be gone into would be to say that the decision of this court in affirming that decree was not final and would be contrary to the Constitution of the State. Const., Art. 4, Part II, Sec. 15. While the consolidation of cases is an appropriate procedure to avoid continued litigation, it can never be used to prolong liti-

gation and to reopen questions which have already been decided.

For the reasons given, the order of September 15, 1942, rescinding the order of July 15, 1942, must be reversed and the order of July 15, 1942, directing the writ of *fieri facias* to issue will thereby be revived and continue in full force.

*Order reversed, with costs.*