CHARLES E. S. STOUFFER, Administrator, *vs.* JOHN B. WOLFKILL.

*Bill to Vacate Transfer of Money Made by the Decedent for Lack of Capacity, Fraud and Undue Influence—Insufficient Evidence of Allegations—Res Judicata.*

A bill in equity by an administrator alleged that the defendant, who had been the agent of the deceased intestate, obtained from him in his lifetime a check for upwards of $4,000, the proceeds of which the defendant had converted to his own use; that at the time the check was obtained the deceased was an old man, incapable of managing his affairs, and that the money had been procured by undue influence and fraud.    *Held,* upon an examination of the evidence, that these allegations are not sustained, but that the proof shows that the gift to the defendant was the free and unconstrained act of the decedent, and that he was at the time capable of making a valid contract.

A. rendered services for many years for his uncle, under a promise of compensation.    Shortly before his death his uncle gave A. a check for about $4,000, which was cashed.    Afterwards A. brought suit against the administrator of his uncle's estate to recover for services rendered him, and in his account

·allowed a credit of $4,000. At the trial of that suit the check was given in evidence and the jury rendered a verdict for the plaintiff for a part of his claim, upon which judgment was entered. *Held*, upon a bill by the administrator of the uncle alleging that the check had been obtained by A. by fraud and undue influence, that the indebtedness of the deceased and the validity of the payment on account had been established by that judgment, and the matter is now *res judicata*.

*Decided January 12th, 1911.*

Appeal from the Circuit Court for Washington County (KEEDY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*H. F. Wingert* (with whom were *Alex. Neill, Jr.,* and *Miller Wingert* on the brief), for the appellant.

*Charles D. Wagaman* and *D. W. Doub,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a bill in equity, brought in the Circuit Court for Washington County by the appellant, administrator of Hiram D. Stouffer against the appellee, John B. Wolfkill, acting as attorney-in-fact, under a power of attorney, from the appellant's intestate, to account for the proceeds of a check amounting to $4,667.07, which it is alleged he unlawfully converted to his own use, and which he refuses to account and to pay over to the appellant.

It appears, that Mr. Stouffer, a resident of Washington County, died intestate, on or about the 7th day of November, 1908, possessed of an estate of real and personal property

worth over sixty thousand dollars. He never maried and left surviving him, one brother, three sisters, and a number of nephews and nieces children of deceased brothers and sisters, as his only heirs at law, and distributees.

The bill avers that on the 24th of May, 1907, the appellee, a nephew of the decedent, was duly appointed an attorney-in-fact of Hiram D. Stouffer by an instrument in writing and the power of attorney was recorded among the Land Records of Washington County, and that at the time of the appointment, Mr. Stouffer, had on deposit in the Hagerstown Bank of Washington County, the sum of four thousand six hundred and sixty-seven dollars in cash, due and payable on demand.

The bill then avers that the appellee while acting as attorney-in-fact of Hiram D. Stouffer contriving and conspiring with a certain Mary Stouffer and a certain Barbara Stouffer, his sisters, with the design and intent to defraud did unlawfully procure his signature to a certain check bearing date of June 10th, 1907, and payable to John B. Wolfkill or order at the Hagerstown Bank, of Hagerstown, Maryland, for the sum of four thousand six hundred and sixty-seven dollars and seven cents.

It then alleges that Hiram D. Stouffer was advanced in age, being over seventy years old and was not only infirm in body, but was for a long time before his death and at the time the check was signed enfeebled and impaired in mind to such an extent as to render him unfit for the transaction of any business and wholly incapable of making a valid deed or contract; that he was particularly susceptible to influences surrounding him and residing with Mary Stouffer, and Barbara Stouffer, with Wolfkill frequently in attendance, his feebleness and incapacity were taken advantage of by them and he was induced, influenced and persuaded to sign the check which was for all monies which he had on deposit at the bank and that the check was drawn up by Wolfkill. That he was helpless and under the control and re-

straint of Wolfkill, Mary Stouffer and Barbara Stouffer, and at various times was subject to cruel treatment at their hands.

It further avers, that the appellee, after procuring the signature of the decedent to the check, and while acting as attorney-in-fact, on the 13th of June, 1907, with the design and intent to defraud did unlawfully withdraw from the bank, the sum of $4,667.07, and did unlawfully transfer and convert the same to his own use and refuses to account for and pay over the same to the appellant, the representative of the personal estate of the deceased.

The prayer of the bill is, that the appellee, be ordered and directed to make an accounting for the fund here in dispute and the accrued interest thereon which he unlawfully withdrew from the bank, and unlawfully transferred and converted to his own use.

The defendant below, the appellee here, admits the allegations set out in the first, second, third, fourth, eighth, ninth and tenth paragraphs of the amended bill but denies that while acting as attorney-in-fact, he contrived and conspired with Mary and Barbara Stouffer, sisters of the appellant's intestate, as charged, to defraud him. He also denies that he unlawfully procured his signature to the check, the proceeds of which is here in dispute, but on the contrary asserts, that the check was a voluntary gift to him from the decedent, absolutely free from the influence of any design or intent exercised either by himself, or in conjunction with the sisters of the deceased, to defraud and that the check was signed by the deceased, in his lifetime, of his own free will. He admits the collection of the check from the bank, but denies he procured the signature to the check and also denies that the money was withdrawn from the bank with the design and intent to defraud, or that he unlawfully converted and transferred it to his own use, the proceeds of the check.

The theory of the defendant's case, that is the giving and cashing of the check, is fully set out in detail in the sixth

paragraph of the defendant's answer, which we will here insert.  He avers, that the two sisters of the deceased were never married, and they made their home with their brother for many years; that about the year 1881, when the respondent was about seven years of age, Hiram D. Stouffer, who was the brother of this respondent's mother, requested the parents of this respondent the privilege of taking this respondent into his home and there care for him, and agreed that this respondent should be well paid for such services as he would render to his said uncle; that thereupon this respondent did go to live with his uncle, and did render many and valuable services to him from that time until the day of his death, on or about the 7th day of November, A. D. 1908, a period of more than 27 years.

That after his uncle's death he filed with the Orphans' Court for Washington County an account for the services; that the account was passed and docketed by the Court, and that amongst other credits allowed on said account is the said sum of $4,667.07, the proceeds of the check.

That subsequently thereto this respondent brought suit in the Circuit Court for Washington County against Charles E. S. Stouffer, administrator of Hiram D. Stouffer, deceased (the complainant in this cause), on the account, and filed in said suit a bill of particulars, and the sum of $4,-667.07 is allowed as a credit in said bill of particulars.

That Charles E. S. Stouffer, administrator, filed the general issue pleas and pleas of limitation to the action, whereupon issue was joined and the cause came on for trial and was submitted to the Court and a jury for trial in the Circuit Court for Washington County.  Testimony was offered in behalf of both the plaintiff and defendant in the cause and the circumstances surrounding the drawing and delivering of the check for $4,667.07 were inquired into; the sisters, Mary Stouffer and Barbara Stouffer, who were present at the time the check was drawn and delivered were both on the witness stand and were examined in chief and cross-

examined in regard to the check, and at the conclusion of the
testimony the Court instructed the jury by granting but one
prayer in the cause, a certified copy of which prayer is here-
with filed as part hereof; after argument by attorneys for
plaintiff and defendant, the jury rendered a verdict for the
plaintiff for the sum of $1,750.00. Upon this verdict a judg-
ment was subsequently entered by the Court and has since
been paid and satisfied by the defendant in that case, who is
now the plaintiff in this cause.

This respondent further shows that prior to the time when
Hiram D. Stouffer drew the check he had frequently ex-
pressed his intention and desire to give a large portion of
his property to this respondent in compensation for the serv-
ices rendered him; that on the day before the check was
drawn he examined his bank book to ascertain the amount
of the balance on deposit to his credit, and also requested his
sister, Barbara Stouffer, to make a like examination, and
when he had ascertained the full amount thereof he sent for
this respondent, who came to him, and then, in the pres-
ence of his two sisters, gave to this respondent the said check
and, being sick at the time, stated in substance as he deliv-
ered the check, that he would give him that, or he (meaning
this respondent), might not get anything; that the act was
a free and voluntary act done without the solicitation or in-
fluence of this respondent, and was the consummation, in
part at least, of a long-cherished desire and frequently ex-
pressed intention to reward this respondent for the services
which had so long and faithfully been rendered by him, whom
he had taken into his home when of tender years, and upon
whom, in the absence of children of his own, he had be-
stowed his affection.

It will thus be seen what are the contentions of the re-
spective parties upon the record, and what are the questions
presented here for review. Concisely stated, the appellant
alleges, first, the want of sanity and mental capacity on the
part of the alleged donor, at the time of the giving of the

check and that he at the time was incapable of making a valid gift of the check to the donee; second, deception, fraud, imposition and undue influence practiced upon him, by the appellee, and by the two aunts, sisters of the decedent, and thirdly, the confidential relations of the parties were such, as to admit of improper dominion and undue influence, and there is no evidence that the decedent had proper and independent advice, in making the gift of the check.

The appellee also relies and insists upon the plea of *res adjudicata,* because the matters in dispute were settled and adjudicated in the law case between the same parties in the Circuit Court for Washington County, where the check, and the proceeds thereof, were determined to be the property of the appellee, and a credit given the appellant, in the trial of that case, and secondly, that the giving and receiving of the check was a free, voluntary and unbiased act, of the decedent, and constituted a valid and *bona fide* gift, *inter vivos,* consequently, the proceeds of the check is his absolute property.

It is clear, we think, from an examination of the evidence set out in the record, of this case, that the appellant has entirely failed to sustain the allegations of his bill, and is not entitled to the relief sought thereby.

In the first place, if the validity of the check and its proceeds were fully and finally gone into and determined in the trial and judgment of the law suit, then, that is the end of the matter, and the appellant is precluded from raising that question in this suit, or to open the same subject of litigation between the same parties, in another suit. The law is well settled that the plea of *res adjudicata* applies, except in special cases not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties, even using reasonable diligence, might have brought forward at the time. *Henderson* v. *Henderson,* 3 Hare, 115; *Marine*

*Bank* v. *Heller,* 94 Md. 216; *Rogers, Brown & Co.* v. *Nat. Bank,* 93 Md. 613; *Beloit* v. *Morgan,* 7 Wallace, 619; *Trayhern* v. *Colburn,* 66 Md. 278.

In *Aurora* v. *West,* 7 Wallace, 102, it was said, where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judicatam* and former judgment in such case, is conclusive between the parties.

Now, it cannot be doubted that the check was allowed as a credit upon the account, in the suit of the appellee against the appellant, in the law case, for services rendered him in his lifetime. JUDGE KEEDY, who sat in the law case, and also in this case, says in his very full and carefully prepared opinion set out in the record, that there was on December 7th, a bill of particulars filed in the case, giving a credit thereon of the sum of $4,667.07 does not seem to admit of any doubt; that the check was in evidence before the jury and that the Court's instruction to the jury refers to the check and says "given in evidence." In the law case the judgment was for the appellee for the sum of $1,750.00 on an account of $8,900.83 and it appears from the bill of particulars filed in the case, that a credit of "1907,—June by check, $4,667.07," was entered thereon.

It seems, therefore, clear to us, to now allow the appellants to recover the proceeds of this check would be to re-open the controversy in the law case without an appeal from the judgment entered therein, and to now hold that the credit was not properly allowed.

This would be in violation of all the established precedents controlling like cases and destroy the conclusiveness of judgments and decrees between the parties. In *Albert* v. *Hamilton,* 76 Md. 309, it was said: It is not in the power of a party to split up a litigation into portions and bring

them before a Court of Justice for adjudication in successive suits. *State* v. *Brown,* 64 Md. 204.

But assuming that the verdict and judgment in the case at law is not conclusive on this appeal and cannot operate in the nature of an estoppel in this case, still we entertain no doubt as to the proper conclusion on its merits.

The proof shows that Mr. Stouffer was capable and competent to understand and to know the nature of his act when he signed the check. While his health was impaired Dr. J. McPherson Scott, his family physician, testified that he visited him on the 5th, 9th and 12th of June, 1907; and at that time he was capable of executing a valid deed or contract. The testimony of the two sisters, Barbara E. and Mary L. Stouffer, was to the same effect, and they were positive and explicit that the decedent was capable of giving the check and knew what he was doing. They were both witnesses to the transaction and state in detail the reasons given by him for the giving of the check. They also testified that he was a man of strong will power and not easily influenced. .

In *Cherbonnier* v. *Evitts,* 56 Md. 276, it is said: In determining whether an owner in disposing of his property by way of gift has done so with a sound mind and in the exercise of his own deliberate will, not only his condition at the time of the execution of the instrument and the circumstances of the act of the execution itself are to be considered, but also his previous life, habits and relation to others, so as to ascertain the natural and probable objects of his bounty, and especially to discover his settled purpose, if any he had, in regard to the disposal of his estate.

There is no legal and sufficient evidence in the record to show that deception, imposition or fraud were practiced by anyone to induce the decedent to make the gift of the check, but on the contrary the proof is clear and full to the effect that the gift was the free, voluntary, unbiased and deliberate act of the donor and that the transaction was a righteous one.

The test in this class of cases being that he (the donor) knew that the gift itself operated to divest him of all title to the property and vest it in the donee. *Zimmerman* v. *Bitner,* 79 Md. 125; 1 *Story's Eq. Jur.* 323.

LORD ROMILLY, in *Cook* v. *Lamotte,* 15 Beav. 239, declared the rule to be, where those relations exist by means of which a person is able to exercise a dominion over another, the Court will annul the transaction under which a person possessing that power takes a benefit unless he can show that the transaction was a righteous one. *Whitridge* v. *Whitridge,* 76 Md. 73; *Davis* v. *Denny,* 94 Md. 392; *Brown* v. *Ward,* 53 Md. 387.

We think the burden of proof cast upon the appellee by the rule of law established by the foregoing cases has been fully met by the evidence in this case.

The appellee's testimony and the averments of the answer are corroborated and supported in a most satisfactory manner by the testimony of Barbara E. and Mary Stouffer, witnesses who were testifying against their interest, because they were heirs at law of the intestate.

Besides this, the declaration of the intestate at the time he gave the check to the appellee that "if I don't give you that you might not get anything," or "if he didn't give him that maybe he wouldn't get nothing," shows his intention of providing for him in a financial way and the want of imposition or coercion on the part of the appellee.

The relation and devotion of the parties for over twenty-eight years shed considerable light upon the transaction and, together with all the surrounding circumstances of the case, should make a Court hesitate long before granting the relief sought by the bill in this case, and annul a transaction satisfactorily appearing to be the uninfluenced, deliberate and intelligent act of the donor.

In *Hunter* v. *Atkins*, 3 Myle & Keene, 113, it is said, if on such grounds a contract so prepared and executed is to be set aside, few, assuredly, of the acts of men dealing with

their own affairs are safe, and the law which enables all who are of sound mind to dispose of their property no longer exists. And in *Zimmerman* v. *Frushour,* 108 Md. 115, it is said: No law that is tolerable among civilized men can ever forbid such a transaction, a gift from a client to a valued attorney, provided he be of sound mind and there is nothing to show that deception was practiced or that the attorney availed himself of his situation to withhold knowledge or exercise any influence advantageous to himself.

But this is not all. It appears that after the trial of the law suit and after the proceedings in this case had been instituted all of the persons (7) interested in the estate of Hiram D. Stouffer, except the appellant, who represents a one-seventh interest therein, and one Clinton Stouffer, who is entitled to a one-fourteenth interest, petitioned the Orphans' Court of Washington County to rescind an order previously passed to prosecute the collection of the claim against the appellee on account of the check here in dispute. The tenth paragraph of the petition is in these words: "Your petitioners show that they are fully satisfied and convinced of the *bona fides* of John B. Wolfkill in taking and receiving the check hereinbefore mentioned and of the free, unconstrained and deliberate intention of Hiram D. Stouffer to give to John B. Wolfkill the check and the proceeds thereof as his absolute property, and they further show that the equity cause has been filed against John B. Wolfkill for the purpose of vexing and harassing him, and that it can result in no benefit to the estate of Hiram D. Stouffer, deceased, but will serve only to make additional costs and counsel fees to be paid out of the estate, and is an attempt to execute threats heretofore made by Charles E. S. Stouffer, administrator as aforesaid, to spend the entire personal estate of his decedent in litigation unless this honorable Court grants the relief herein prayed."

And in the third paragraph it is stated that at the trial of the suit at law all the matters in dispute between Charles

E. S. Stouffer, administrator as aforesaid, and John B. Wolfkill were put in issue and the proceeds of the check, to wit, the sum of $4,667.07, were allowed as a credit upon the account sued on.

As to the rulings upon the exceptions to the testimony we find no such error as prejudiced the appellant's case. Under the facts and circumstances of the case the testimony was relevant and admissible.

It follows from what has been said that we regard the proof in this case as fully measuring up to the requirements of the law to constitute a valid gift *inter vivos* between the appellant's intestate and the appellee, and without further prolonging this opinion the decree of the Circuit Court of Washington County holding that the appellant is not entitled to the relief sought and dismissing his bill will be affirmed.

> *Decree affirmed and bill dismissed, with costs to the appellee.*