## ASHMAN *v.* ASHMAN

[No. 74, October Term, 1952.]

446

*Decided February 6, 1953.*

The cause was argued before COLLINS, HENDERSON and HAMMOND, JJ.

*Louis S. Ashman,* with whom were *Ashman & Link* on the brief, for the appellant.

*Samuel K. Dennis,* with whom was *Eugene M. Feinblatt* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order sustaining a demurrer to part of a petition filed by the appellant.

On September 14, 1948, Olga E. Ashman, the appellee in this case, filed a bill of complaint in Circuit Court No. 2 of Baltimore City, against her husband, Louis S. Ashman, the appellant here, for permanent alimony and counsel fees on the ground that he had deserted and abandoned her without just cause. In that case an answer was filed by her husband denying the desertion and in which he stated among other things "that he admits taking some of his clothes to the Guilford home of Chaplain (Colonel) and Mrs. Harry D. Southard on September 8, 1948—in pursuance of the mutual separation agreement of the parties on that day—as recited in his Special Delivery letters of September 9th and 14th, 1948, to the Plaintiff—* * *." The chancellor on February 17, 1949, granted Mrs. Ashman permanent alimony of $50.00 per week and counsel fee. From that decree Mr. Ashman appealed here and this Court affirmed the decree of the chancellor in an opinion in *Ashman v. Ashman*, 194 Md. 565, 72 A. 2d 250, decided March 8th, 1950.

On April 30, 1952, appellant filed in the previous case a petition in which he alleged for the purposes of this case the following. He set out the finding of this Court in the former case. He further alleged: "3—That subsequent to their aforesaid separation of September 9, 1948, and for at least three consecutive years prior to the filing of this Petition—[April 30, 1952,] the said Olga E. Ashman and Louis S. Ashman (this Petitioner) have voluntarily lived separate and apart, without any cohabitation, and their separation is beyond any reasonable expectation of reconciliation." In the petition now before us he set out his then present financial and physical condition. He prayed that the aforementioned permanent alimony decree be terminated and annulled; that he be granted a divorce *a vinculo matrimonii* from the said Olga E. Ashman with reasonable Permanent Alimony to her; that in any event the above mentioned alimony of $50.00 per week to the

said Olga E. Ashman be reduced to a reasonable weekly sum; and for other and further relief.

Olga E. Ashman demurred to those parts of the petition which requested that the above mentioned permanent alimony decree of February 17, 1949, in her favor be terminated and annulled, and the petitioner be granted a divorce *a vinculo matrimonii* from her. General Equity Rule 18. From an order sustaining the demurrer the appellant appeals.

Of course, a separation may be involuntary when it first occurs and later may become voluntary. The word voluntary of course "connotes an agreement". *France v. Safe Deposit and Trust Company,* 176 Md. 306, 326, 4 A. 2d 717, 726. *Hahn v. Hahn,* 192 Md. 561, 566, 567, 64 A. 2d 739, and cases there cited. Under the provisions of Code, 1951, Article 16, Section 33, the court may decree a divorce *a vinculo matrimonii* among other grounds "when the husband and wife shall have voluntarily lived separate and apart, without any cohabitation, for three consecutive years prior to the filing of the bill of complaint, and such separation is beyond any reasonable expectation of reconciliation." As the petition in the instant case was filed on April 30, 1952, the alleged agreement, if one was made, to be effective in the instant case, must have been made prior to April 30, 1949. In fact the petition now before us alleges that subsequent to September 9, 1948, and for at least three consecutive years prior to the filing of the petition on April 30, 1952, that the voluntary separation occurred. In his answer in the former case he alleged a mutual separation agreement of September 8, 1948. We said in the former case, 194 Md. at page 570, 72 A. 2d at page 252: "His special delivery letter of September 9th in which he advises her that he is residing with friends in Guilford, until he settles for the property on Cathedral Street or until she advises him that she intends to join him at the Cathedral Street home, seems to absolutely negative any separation agreement." Therefore, it is clear from the allegations of the part of the petition here before us,

that, if there was a voluntary separation agreement as alleged, it was made between the dates of September 9, 1948, and April 30, 1949.

In the former case the bill of complaint was filed on September 14, 1948, the decree of the chancellor was signed on February 17, 1949, which was affirmed by this Court on March 8, 1950. All questions as to who was responsible for the separation of the parties before February 17, 1949, has been finally adjudicated in the former case and affirmed on appeal in favor of the wife, Olga E. Ashman, where she was awarded permanent alimony on the grounds that her husband had abandoned and deserted her without just cause. *Zukerberg v. Zukerberg,* 188 Md. 428, 431, 53 A. 2d 20; *Kruse v. Kruse,* 183 Md. 369, 37 A. 2d 898.

During the remaining time between February 17, 1949, when the decree was signed by the chancellor, and April 30, 1949, the case was in this Court on appeal where it was affirmed on March 8, 1950. If a voluntary separation agreement had been made by the parties while the case was pending in this Court, Mrs. Ashman would have no longer been a deserted spouse, this would have been a complete defense to her bill of complaint, there would have been no question left for judicial decision and the case would have become *moot. Public Service Commission v. Chesapeake and Potomac Telephone Co.,* 147 Md. 279, 128 A. 39; *Velasco v. Potestant Episcopal Church,* 200 Md. 634, 639, 92 A. 2d 373, 376. We were not informed by the appellant here that any such voluntary separation agreement had been made after September 8, 1948, or while the case was here pending. In fact, the former appeal was strenuously argued by both sides in this Court. In his brief filed in the former case in this Court on September 26, 1949, well after April 30, 1949, he alleges no voluntary separation agreement other than that of September 8, 1948, although he does discuss reunion discussions of the parties. Here the appellant seeks, by petition in the same case, to render nugatory the action of the chancellor and the action of this Court

in that case by an allegation which, if true, he was certainly aware of during the pendency of the case and did not disclose to this Court either in his brief or in the argument. Here is attempted a reargument of the former appeal. The law requires that there should be an end of litigation, and where a party has had a full and fair opportunity presented of making all the defenses at his command to an asserted right or claim, and being well aware thereof does not do so, he cannot later be heard to say that he did not avail himself of them. *Rody v. Doyle,* 181 Md. 195, 199, 29 A. 2d 290; *Parr v. State,* 71 Md. 220, 17 A. 1020.

In the case of *State v. Brown,* 64 Md. 199, 204, 1 A. 54, 56, 6 A. 172, this Court quoted with approval the following language from *Henderson v. Henderson,* 3 Hare 115, as follows: "In trying this question, I believe I state the rule of the Court correctly that where a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to bring forward their whole case, and will not, except under special circumstances permit the same parties to open the same subject of litigation in respect of a matter which migh thave been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res judicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward at the time." *Moodhe v. Schenker,* 176 Md. 259, 269, 4 A. 2d 453; *Shirk v. Sneeringer,* 163 Md. 265, 267, 162 A. 520; *Royston v. Horner,* 86 Md. 249, 253, 37 A. 718; *Stouffer v. Wolfkill,* 114 Md. 603, 609, 80 A. 300. As the petition here before us discloses on its face that the alleged voluntary separation agreement was made between the dates of September

9, 1948, and April 30, 1949, the demurrer was properly sustained for the reasons herein given.

Appellant further complains as to the form of the demurrer filed by the appellee. There is no doubt that the purpose was to demur to such parts of the petition as prayed a divorce *a vinculo matrimonii* and the terminanation of the permanent alimony decree and that it was so regarded by the chancellor. To that extent his order sustaining the demurrer was in the nature of a final decree, disposing of the points raised. Compare *Magness v. Loyola Saving & Loan Association,* 186 Md. 569, 571, 47 A. 2d 769, and cases there cited. That part of the petition which seeks a reduction in the amount of the permanent alimony is in no way affected by the demurrer and is still before the chancellor.

*Order affirmed, with costs.*